601 A.2d 297

**COMMONWEALTH of Pennsylvania**

v.

**Benjamin H. BEATTIE, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1991.

Filed Dec. 11, 1991.

Benjamin H. Beattie, pro se.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

CIRILLO, Judge:

This is an appeal from an order entered on October 19, 1990 in the Court of Common Pleas of Allegheny County denying appellant Benjamin H. Beattie's motion in arrest of judgment following his conviction for disorderly conduct. We reverse.

Before reaching the merits of the appeal, we must address a procedural shortcoming in the manner in which this appeal was taken. In Pennsylvania, "[i]t is unquestionably the law that a defendant may appeal only from a final judgment of sentence and an appeal from any prior order will be quashed as interlocutory." *Commonwealth v. Myers*, 457 Pa. 317, 319, 322 A.2d 131, 132 (1974). In its brief for appellee the Commonwealth states that:

> Th[is] appeal has been taken not from the judgment of sentence but from the order denying appellant's post-trial motions. Because this case illustrates the repeated failure of the Court of Common Pleas of Allegheny County to comply with procedural requirements accompanying appeals of summary convictions, however, this Court may determine that, for practical purposes, the order denying post-trial motions should be viewed as an appealable order.

Brief for appellee at 3, note 2.

Although this is undeniably improper, we note that the record indicates that a judgment of sentence was also entered on October 19, 1990. Consequently, even though the appeal is captioned as being from an interlocutory order, it is clear that the case had been finally resolved in

the trial court when the appeal was taken. We will therefore treat the captioning defect as harmless. As we stated in *Commonwealth v. Gumpert*, 354 Pa.Super. 595, 512 A.2d 699 (1986), "[t]his is not to say we are indifferent to the proper captioning of appeals, but only that justice is best served by proceeding to the merits of the case." 354 Pa.Super. at 597, 512 A.2d at 701. *See* Pa.R.A.P. 905(a).

Beattie was found guilty by a magistrate of the summary offense of disorderly conduct, and he filed a *pro se* appeal to the Court of Common Pleas of Allegheny County. In a *de novo* bench trial on April 5, 1990, Beattie was again found guilty of disorderly conduct. Although the Honorable Raymond L. Scheib did not announce his verdict in open court, he entered an order that same day adjudicating Beattie guilty and sentencing him to pay a fine of three hundred dollars, and costs. The trial court then mailed a copy of the order of adjudication and sentence to Beattie.

Beattie was sentenced *in absentia*, and as a result he was never advised on the record of his right to file post-trial motions or an appeal, as required by Pennsylvania Rules of Criminal Procedure 1123(c) and 1405(c). Nevertheless, on April 19, 1990 Beattie filed Exceptions, and a hearing was scheduled for July 13. That hearing was postponed. Despite the fact that Pennsylvania Rule of Criminal Procedure 1123 mandates the disposition of post-verdict motions *before* imposition of sentence, Beattie's post-trial motion for arrest of judgment was denied after argument on October 19, 1990, six and one-half months *after* the sentence was imposed. On November 9, 1990 Beattie filed his notice of appeal to this court.

The incident which resulted in Beattie's arrest for disorderly conduct occurred at 8:30 p.m. on January 13, 1990. Beattie and two friends had been trying to reposition a 1977 Mercury with West Virginia plates, and a 1979 Honda with no license plates, in his driveway. At all times during the incident Beattie, his two friends and the two cars were on Beattie's private property.

Responding to a vague radio dispatch apparently occasioned by a telephone complaint about some men and an unlicensed car at Beattie's address, two police officers from Baldwin Borough drove to Beattie's house. Upon arrival they approached the two friends at the foot of the driveway, asked to whom the Honda without license plates belonged, and who else was on the property. One of the friends pointed to Beattie up the driveway and identified him while the owner of the Honda showed the officer the title to his car. Officer Vetter saw Beattie near the house, behind the wheel of the Mercury. Officer Vetter walked up the driveway and waited for Beattie to finish parking the car. During the wait the officer noticed a large number of cars, both with and without license plates, behind the house. Officer Vetter then asked Beattie if he had a driver's license and registration for the Mercury. Beattie refused to answer. Officer Vetter asked if he had any identification at all; Beattie told Officer Vetter to get off his property.

Officer Vetter, by then joined by his partner and eventually a supervisor, continued to demand identification. Beattie repeatedly told the police officers to get off his property, and that they needed a warrant to be on his property. At one point Beattie went into his house alone, came out with the deed to his property and offered to sign his name so the officers could compare his signature to the one on the deed. The police officers refused to accept his offer. Officer Vetter testified that they arrested Beattie "for investigations by the police and for disorderly conduct for his conduct with us [the officers]." Officer Vetter and his partner took Beattie to the police station where he was issued a traffic citation and a citation for disorderly conduct. The traffic citation was later dropped.

On appeal, in his *pro se* brief, Beattie presents four issues for our consideration: 1) whether appellant can be guilty of disorderly conduct when he was on his own property engaged in lawful activities; 2) whether appellant was subjected to a false arrest and malicious prosecution in retaliation for exercising his First and Fourth Amendment rights;

3) whether the police officers initially had the requisite probable cause to enter private property and interrogate appellant; and 4) whether appellant was denied due process when he was prohibited from recording his own testimony in front of the magistrate and again when he was precluded from testifying at the trial *de novo*, and whether those prohibitions were a means of protecting dishonest police officers.

■ Beattie argues that the disorderly conduct conviction cannot stand because he was under no obligation to answer the police officers' questions. Beattie contends now—as he did the night of the incident—that the officers were illegally on his property because they had no probable cause to suspect him of a crime and they had no warrant. We agree. In *Commonwealth v. Douglass*, 372 Pa.Super. 227, 539 A.2d 412 (1988), *allocatur denied*, 520 Pa. 595, 552 A.2d 250 (1988) this court explained the circumstances under which an individual is required to answer questions posed by police.

> A police encounter with a suspect may be properly characterized as a mere encounter, an investigative detention, a custodial detention, or a formal arrest. A "mere encounter" (or request for information) need not be supported by any level of suspicion, but it carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion; it subjects the suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. (citations omitted).

372 Pa.Super. at 238-9, 539 A.2d at 417-418.

Beattie contends that since the officers had no grounds for suspicion, the incident was a mere encounter and he was under no obligation to respond to their demands for identification. Conversely, the Commonwealth characterizes the incident as an investigative stop, citing the radio dispatch, the frequent car thefts in the area, and the large number of cars behind Beattie's house as grounds for the officers' reasonable suspicion.

To evaluate the validity of an investigative stop we must first determine whether the police officers' action was justified at its inception. To be justified the officers must have had reasonable suspicion that a crime had been or was about to be committed. "Reasonable suspicion, like probable cause, is dependant upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion." (citations omitted). *Alabama v. White*,[1] 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990).

■ In the case at hand the record reveals an alarming lack of regard for the quality and quantity of information

1. This court considered the propriety of an investigatory stop of an individual in the driveway of his private residence in *Commonwealth v. Ogborne*, 384 Pa.Super. 604, 559 A.2d 931 (1989) (Tamilia, J., dissenting), *reargument denied*, July 10, 1989. Although our supreme court initially granted allocatur, *Commonwealth v. Ogborne*, 524 Pa. 626, 574 A.2d 68 (1990), the appeal was later dismissed as improvidently granted, *Commonwealth v. Ogborne*, 525 Pa. 570, 583 A.2d 789 (1991). The United States Supreme Court granted certiorari, vacated judgment, and remanded to our court for further consideration in light of *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The panel (Cavanaugh, Tamilia and Popovich, JJ.) filed its revised opinion on October 21, 1991, affirming the judgment of sentence (Popovich, J. dissenting).

In *Ogborne*, based on a tip from a reliable informant, the police conducted an investigatory stop of an individual in his private driveway. The appellant was known to the police to deal in drugs, and the informant described the car appellant would be driving, his destination, his approximate time of arrival and the type and approximate quantity of drug he would be carrying. In short, the informant, whose veracity was known to the police, detailed future activity not generally known to the public, as required by *Alabama v. White*, *supra*. This court found the totality of circumstances in *Ogborne*, which provided the officers with reasonable suspicion to conduct the investigatory stop, to be similar to those in *White*, and affirmed the conviction on that basis.

Conversely, in the instant case the transcript reveals no information about the actual source—or reliability—of the informant. In addition, the dispatch was unspecific and predicted no future activity. Thus without corroborating evidence the police lacked the reasonable suspicion necessary to continue up the private driveway to interrogate Beattie.

required to conduct an investigative stop. According to Officer Vetter's testimony, he and his partner were responding to a vague radio dispatch about "a group of men who could have been involved with a stolen vehicle earlier in the month." Only Beattie's address was given; neither the source of the information nor a description of possible suspects was included in the dispatch. The officers drove to the address relayed over the radio and approached the two men at the foot of the private driveway. The officers asked the men about the Honda that bore no license plate and were promptly shown the proper ownership papers. That should have ended the inquiry, for Officer Vetter admits that they had no reports of a stolen 1977 Mercury or 1978 Honda, and no additional information to corroborate the dispatch or provide the totality of circumstances necessary to pursue their investigation further. Nevertheless, Officer Vetter proceeded up the private driveway towards Beattie and the residence. It was at that moment that Officer Vetter first saw the twenty-six cars behind the house; the cars were not visible from the bottom of the driveway or the street, especially in the darkness of a winter night. Consequently, despite Judge Scheib's suggestion that the the lot full of cars could have provided the requisite probable cause, the newly-discovered cars could *not* have provided the reasonable suspicion necessary to proceed beyond the mere encounter at the bottom of the driveway.

We find that under the constitution of the Commonwealth of Pennsylvania [2], the police lacked the reasonable suspicion required to continue up the private driveway and conduct an investigative stop of Beattie. *Cf. Douglass,* 372 Pa.Super. at 238–239, 539 A.2d at 417–418 (decided under the fourth amendment of the U.S. Constitution). Inasmuch as the officers had no authority to compel Beattie to answer their inquiries, Beattie's conviction for disorderly conduct, which was the result of his refusal to answer, must be reversed. *Id.*

2. Pa. Const. of 1874, art. I, § 8 (1969).

■ We note that even if the investigative stop were held to be valid, Beattie's conviction for disorderly conduct would still warrant reversal. The evidence in the record is insufficient to prove every element of the offense charged, as required. Beattie was convicted of disorderly conduct pursuant to section 5503(a) of the Pennsylvania Crimes Code [3] which provides:

§ 5503. Disorderly conduct

(a) Offense defined.—A person is guilty of disorderly conduct if, *with intent to cause public inconvenience, annoyance or alarm,* or *recklessly creating a risk thereof,* he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

Pa.C.S.A. 18 § 5503 (emphasis supplied).

To convict for disorderly conduct the Commonwealth must establish that the accused *intended to cause,* or *recklessly* created a *risk* of causing *public* inconvenience or alarm. 18 Pa.C.S.A. § 5503. "Public" is defined in the statute as, "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." 18 Pa.C.S.A. § 5503(c).

The investigative stop occurred on Beattie's *private property*, at the top of his private driveway, away from the street or public highway. Beattie's property is not open to the public and his residence is a private dwelling, not an apartment building. Beattie's two acre property abuts the South Pittsburgh Water Company and an unoccupied two

---

3. Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 5503(a).

acre lot. Applying the statutory definition of "public" to the circumstances of Beattie's arrest, it is obvious that Officer Vetter did *not* confront Beattie "in a place to which the public or a substantial group has access...." 18 Pa. C.S.A. § 5503(c). Consequently, the Commonwealth has failed to prove a vital element of the offense charged.

In *Commonwealth v. DeLuca,* —— Pa. ——, 597 A.2d 1121 (1991), our supreme court decided a case under the same statute. In *DeLuca* the police had been called to the scene of a police stabbing at 1:00 a.m. As the police officers approached they noticed the defendant walking away from a cluster of people who seemed to the police to be a focal point of the activity. One of the officers told DeLuca to stop and remain at the scene until they had an opportunity to assess the situation. DeLuca refused to do so and told the officer he was leaving and to get out of his way. The police officer again told DeLuca to stay; DeLuca responded with obscenities and a repetition of the statement that he was leaving. DeLuca was arrested for disorderly conduct, and later convicted.

In affirming DeLuca's conviction our supreme court focused on the "equally important evil sought to be prevented by the statute, to wit: 'recklessly creating a *risk* of public alarm, annoyance or inconvenience.' " *Id.* at ——, 597 A.2d at 1123. (emphasis in original). Although DeLuca was walking away from the crowd at the time of the incident, the court stated:

> Such a situation is, by its nature, fraught with danger; danger not only to participants in whatever incident may have been the genesis of such a scene, but danger to bystanders, passersby and arriving police officers. Here, the officer made no illegal or unreasonable request of the appellee. The appellee's response was the very type of spark the statute so plainly seeks to extinguish before it becomes a flame.

*Id.*

In the case at hand the Commonwealth contends that if the investigative stop was valid, then Beattie was required

to provide identification and his vocal and emphatic refusal to do so constituted grounds for arrest for disorderly conduct. We disagree. The circumstances which, in the supreme court's view, justified DeLuca's arrest are absent in Beattie's case. DeLuca was on public property, in close proximity to the site of a recent stabbing, and within earshot of thirty to fifty people. Beattie was in his own driveway parking a car. No violent crime had been committed. No reference to a crowd or even to inquisitive neighbors, bystanders or passersby appears in the record. Unlike the situation in *DeLuca*, the incident with Beattie lacked the indicia of disorder characteristic of confrontations with "the very type of spark the statute so plainly seeks to extinguish before it becomes a flame." *Id.* Therefore, even under the new supreme court interpretation of the statute, Beattie could not legitimately be charged with recklessly creating a risk of a public disturbance.

As we have conclusively established that Beattie's conviction for disorderly conduct cannot stand, his remaining issues are moot and we therefore will not address them.

Judgment of sentence reversed.

FORD ELLIOTT, J., concurs in the result.