COMMONWEALTH of Pennsylvania,
Appellee,

v.

Robin TROY, Appellant.

Superior Court of Pennsylvania.

Submitted June 16, 2003.

Filed Sept. 11, 2003.

Joel B. Johnston, Pittsburgh, for appellant.

Timothy F. McCune, Asst. Dist. Atty., Butler, for Com., appellee.

BEFORE: HUDOCK, BENDER and TAMILIA, JJ.

OPINION BY BENDER, J.:

¶ 1 Robin Troy appeals from the October 8, 2002 judgment of sentence entered against her for the summary offense of disorderly conduct, in which she was ordered to pay a $25.00 fine. We affirm.

¶ 2 A factual and procedural history follows. Appellant lives in the City of Pittsburgh in an apartment with her five children and elderly mother. Across the street is a building owned by Brian Striegel (Brian). Appellant first met Brian in August of 2000, after he first purchased the building. N.T. Hearing, 10/8/02, at 20. At that time, she informed Brian about problems she had been experiencing with his tenants involving drug dealing and use, prostitution, and wild parties, all of which the previous landlord failed to address. *Id.* Brian gave Appellant his business card and assured her that he was not like the previous landlord and that she should not worry. *Id.* Appellant stated that she felt hopeful after she met Brian because she thought he would be different from the previous landlord. *Id.*

¶ 3 Unfortunately, after Brian purchased the building, the problems worsened. *Id.* One tenant in Brian's building repeatedly put her trash out on the curb several days in advance of the scheduled garbage pickup, in violation of a City of Pittsburgh ordinance. *Id.* at 21. As a result, stray animals would rip the garbage apart and it would become strewn all over the street. *Id.* Appellant tried to resolve this problem with the offending tenant to no avail. *Id.* at 22. Appellant wrote numerous letters to Brian and called him on the phone twice to inform him of the problem and to request that he speak to his tenants about the appropriate time to place garbage out for pick up. *Id.* Appellant claimed that Brian always responded that he was doing the best he could and that if Appellant had

a problem, she should call the police. *Id.* at 24. Eventually, Brian stopped taking Appellant's calls. *Id.* Appellant indicated that the police would not address the garbage problem, so she reported it to the health department. *Id.* Ultimately, Brian was cited in housing court and, although Appellant attended the housing court hearing to testify against him, Brian failed to appear and was fined. *Id.* at 25.

¶ 4 At some point in December of 2001, Appellant returned home and found garbage strewn about the street. *Id.* Appellant's mother was planning to go outside to pick it up, as she and Appellant had done on numerous occasions. *Id.* Appellant said, "yes, we are going to pick it up; but I've had it. We're done." *Id.* at 26. Appellant complained that for months she "did all the things [she] was supposed to do[,]" like call the health department, and she "got nowhere." *Id.* Appellant explained that she "just lost it" and concluded that she could not make Brian understand or do anything about the ongoing problems with his tenants. *Id.* Accordingly, Appellant collected some of the garbage, packaged it, and mailed it to Brian and Connie Striegel, Brian's wife (Connie), at their private residence in Cranberry Township, Butler County. *Id.*

¶ 5 On December 21, 2001, Connie returned home from the grocery store and discovered a wet, leaky package on her front porch. *Id.* at 4. The package was wrapped in children's Christmas wrapping paper and had a return address of "Santa" written on it. *Id.* Connie and Brian's college-age daughter, Erica Long (Erica), greeted her mother and indicated to her that their mail carrier had just delivered "this gross, stinky package and it's on the front porch." *Id.* at 4–5, 10. The mail carrier had indicated to Erica that the package smelled like oranges, but when Erica put her nose up to it and smelled it,

she thought it smelled like garbage and ammonia. *Id.* at 10. Erica left the package outside because she did not know what it was. *Id.*

¶ 6 Despite her daughter's request that they not open it, Connie brought the package into the kitchen and, as she opened it, it "literally fell apart" and the contents fell onto the floor. *Id.* at 5. The contents consisted of a used sanitary napkin, hairballs, rotten oranges, banana peels, and other "typical garbage" that Erica described as "wet, old garbage." *Id.* at 5, 10. Connie saw a letter, signed by Appellant, in the package. *Id.* at 6. The letter, wet and stained, read as follows:

> Brian, Your tenants are putting out their trash four days early. The evidence is in the box. Your tenant B.J. Sharp has some trash in this box. The next time I will not mail this; I will bring it. I will also knock on all of your neighbors' doors and tell them exactly what kind of people you and your wife are. My children deserve a clean, safe place to live. I will not allow you to stand in my way. The mother animal is a dangerous animal. I will take any and all legal means to stop you. Corral your tenants. Also everyone that you show your property to is being checked out. You might want to warn them of that. We will not tolerate any more drug dealing, prostitution or garbage from your building.

*Id.* at 6.

¶ 7 Approximately four or five days after she mailed the package, Appellant received a phone call from a Cranberry Township police officer who asked her if she had sent the package. *Id.* at 26. Appellant admitted to the police officer that she did send the package and the letter to Brian explaining why she did it. *Id.* Likewise, Appellant admitted at the hearing that she

sent the package and explained her reasons for doing so. *Id.* at 21.

¶ 8 On March 19, 2002, a district justice in Butler County found Appellant guilty of a summary offense of disorderly conduct. Appellant appealed the district justice's decision and, on October 8, 2002, the Honorable John H. Brydon, in the Court of Common Pleas of Butler County, conducted a hearing and heard testimony from Appellant, Connie, and Erica. At the conclusion of the hearing, Judge Brydon upheld the decision of the district justice and found Appellant guilty of the summary offense of disorderly conduct under 18 Pa. C.S. § 5503(a)(4). However, Judge Brydon, noting his understanding of Appellant's predicament, desire to live in a clean neighborhood, and desire to protect her children, decreased the fine imposed by the district justice from $300.00 to $25.00. Appellant filed a timely notice of appeal to this Court on November 7, 2002.

 ¶ 9 Appellant raises two issues in this appeal, both of which relate to the sufficiency of the evidence necessary to sustain her conviction for disorderly conduct. The applicable standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bullick,* 2003 PA Super 285, 8, 830 A.2d 998, 1000 (2003) (quoting *Commonwealth v. Gooding,* 818 A.2d 546, 549 (Pa.Super.2003)).

¶ 10 Appellant was convicted of a summary offense under 18 Pa.C.S. § 5503(a)(4) of the disorderly conduct statute, which reads in pertinent part as follows:

**§ 5503. Disorderly conduct**

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

\* \* \* \*

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

\* \* \* \*

(c) **Definition.**—As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any

neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503.

¶ 11 Overall, we conclude that the evidence was sufficient to establish that Appellant recklessly created a risk of public inconvenience, annoyance or alarm by sending a package of wet, leaky garbage through the mail, which created a hazardous or physically offensive condition likely to affect persons in a place, namely the United States Post Office, to which the public or a substantial group has access. We shall proceed to examine each issue Appellant raises separately.

■ ¶ 12 In her first issue, Appellant contends the evidence was insufficient to establish that her conduct was "public" in nature so as to be within the purview of section 5503. Appellant argues that the package was sent to a private residence, the contents of the package were not discernible until the recipient opened it, and there was no evidence that the contents of the package had an affect on anyone other than the intended recipients.

¶ 13 Section 5503 provides a definition for "public," as indicated above, which for purposes of the statute "means affecting *or likely to affect* persons in a place to which the public or a substantial group has access". 18 Pa.C.S. § 5503(c) (emphasis added). Such public places include, for example, transport facilities, places of business, or any premises that are open to the public. *Id.*

¶ 14 The United States Post Office and its facilities constitute a public place. The post office is a place of business to which the public has access and a substantial group of persons, namely the postal workers who administer and distribute the mail, have access. Appellant's use of these facilities, through which she sent the wet, leaky package containing garbage of an offensive and potentially hazardous nature (*i.e.*, including bloody material), rendered her behavior "public" for purposes of the disorderly conduct statute. Although the Commonwealth did not call any postal employees to testify at the hearing, Appellant admitted to mailing the package and Erica testified that package was wet and leaking when the mail carrier delivered it. N.T. Hearing at 21, 26. In addition to this evidence, the trial court implicitly took judicial notice of the fact that postal employees were exposed to the potentially hazardous or physically offensive package once the Appellant placed it into their hands for delivery. Appellant's argument that her conduct was not sufficiently "public," for purposes of section 5503, is without merit.

¶ 15 We further note that Appellant relies on *Commonwealth v. Beattie*, 411 Pa.Super. 177, 601 A.2d 297 (1991), and *Commonwealth v. Coon*, 695 A.2d 794 (Pa.Super.1997), in support of her argument on this issue. However, both of those cases involved conduct confined to private premises and are, therefore, clearly distinguishable from the facts in the instant case. In *Beattie*, the defendant's allegedly disorderly conduct was confined to his own residence and driveway, and in *Coon* the defendant's conduct was confined to two parcels of adjoining private property in a rural area to which no substantial group of people had access. In the instant case, Appellant's placement of an offensive and potentially hazardous package within the public domain of the postal system makes her conduct "public" within the purview of the disorderly conduct statute and distinguishes this case from *Beattie* and *Coon.* As Judge Brydon noted, "the fact that [Appellant] used the postal service was the touchstone in the case." N.T. Hearing at 35–36.

¶ 16 In her second issue, Appellant argues that the Commonwealth failed to present sufficient evidence to establish the requisite *mens rea* for disorderly conduct. "The mens rea requirement of [section 5503] demands proof that appellant by his actions intentionally or recklessly created a risk or caused a public inconvenience, annoyance or alarm." *Commonwealth v. Gilbert,* 449 Pa.Super. 450, 674 A.2d 284, 286 (1996). The specific intent requirement of this statute "may be met by a showing of a reckless disregard of the risk of public inconvenience," annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm. *See Commonwealth v. Kidd,* 296 Pa.Super. 393, 442 A.2d 826, 827 (1982).

¶ 17 In support of her argument on this issue, Appellant relies heavily on *Commonwealth v. Weiss,* 340 Pa.Super. 427, 490 A.2d 853 (1985). In that case, the defendant shouted obscenities at a police officer who forcibly broke down the door to her trailer to arrest her husband. In reversing the defendant's judgment of sentence for disorderly conduct, we emphasized that the conduct occurred inside the defendant's home and that the evidence did not establish a "conscious disregard of a substantial and unjustifiable risk that public annoyance or alarm would result from her conduct, or a gross deviation from the standard of conduct that a reasonable person would observe in her situation." *Weiss,* 490 A.2d at 857. In the instant case, the evidence was sufficient for the trial court to conclude that Appellant's conduct was reckless, *i.e.,* she consciously disregarded a substantial and unjustifiable risk that public annoyance or alarm would result. As we explained in our analysis of the first issue herein, Appellant may have intended to target Brian and/or Connie specifically, but, in doing so, she consciously disregarded the risk of exposure of many other people in the post office to the potentially hazardous garbage she purposefully sent through the mail to reach her intended target.

¶ 18 For the foregoing reasons, we affirm the judgment of sentence for the summary offense of disorderly conduct in which the court imposed a fine of $25.00.

¶ 19 Judgment of sentence affirmed.

¶ 20 Judge TAMILIA concurs in the result.