J-S28030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GALEN JOEL KEATON, | |
| Appellant | No. 1949 MDA 2014 |

Appeal from the Judgment of Sentence entered October 15, 2014,
in the Court of Common Pleas of Franklin County,
Criminal Division, at No(s): CP-28-CR-0001561-2013

BEFORE:  BOWES, ALLEN, and LAZARUS, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED MAY 06, 2015**

Galen Joel Keaton ("Appellant") appeals from his judgment of sentence of twelve months' probation imposed after a jury convicted him of disorderly conduct, graded as a third degree misdemeanor.[1]    18 Pa.C.S.A. § 5503(a)(1).

The notes of testimony from the jury trial reveal the following:  Sarah Provard had been friends with Appellant for about three years, and dated him "for about nine months".  N.T., 9/11/14, at 18-22.  On August 9, 2013, Ms. Provard was at Jeremy Wolf's photography studio on Main Street in Chambersburg, Pennsylvania.  *Id.*, at 23.  Ms. Provard testified:

---

[1] Appellant was acquitted of two (2) counts of simple assault.  18 Pa.C.S.A. § 2701.

I guess Jeremy and I were just right outside the studio sitting outside and [Appellant] was driving past. I didn't see him at first but I just saw a car, like I heard a car whipping and pull in very quickly because I guess he saw me and he walked up. I don't remember what was said. I didn't speak to him but he threw a bag of stuff down on the ground. … Then he left.

*Id*. at 24.

Ms. Provard testified that Appellant returned to the photography studio later that same day, when it was dark, and Ms. Provard was inside and Jeremy Wolf was outside. *Id*. at 25, 30. She stated that the photography studio was not open for business, although the front door was unlocked. *Id*. at 30. Ms. Provard testified:

The next thing I know something hit my head. It was a water bottle, and I looked up and [Appellant] was standing right there, and, the … all I thought was run, so I ran.

*Id*. at 25.

Jeremy Wolf testified regarding the August 9, 2013 afternoon incident:

Sarah [Provard] was visiting in the late afternoon at some point. We were outside the studio talking and a car swerved and screeched to a stop and an angry man got out and threw garbage at us. That was the first time I met [Appellant]. … I was told after that who he was.

*Id*. at 42.

Regarding the events later that evening, Mr. Wolf testified:

[A] few hours went by and [Sarah Provard] and I were talking and the door was open and the lights were on but I wasn't open for business. We were just kind of still there. I had stepped out to have a cigarette on the sidewalk and I tend to pace when I'm smoking. Sarah was still inside the studio. As I [was] walking away from the door I recall hearing what – I thought she was

coming back outside to talk to me but there was nobody there. Within seconds of hearing the door I heard her scream and at the top of her lungs screaming. It was horrifying. I sprinted inside. I opened the door and as soon as I got inside the studio and around the little partition inside the door I witnessed [Appellant] dragging Sarah by her hair, punching her and swinging her, slamming her head against the wall and her dress was ripped and then I just kind of ran up behind him and grabbed him by the head and shoulders and dragged him outside the studio to the front on the sidewalk and in to the street at which point we both fell down and he got up and ran – ran away seemingly and so I jumped up and ran inside scared to death. I had no idea if he had stabbed her or what happened. I didn't know what happened yet so I got back inside to see where she was and what happened and she wasn't – I couldn't find her. I noticed the bathroom was closed and the light was on so I ran back to the bathroom door. I could hear her on the phone inside so I knew she called the police from inside the locked bathroom door, at which point I turned to go lock the front door of the studio because I hadn't, and when I turned around he was right behind me [and] had come back in the studio and at that point I was at the back of the studio right outside the bathroom door where Sarah was, and I grabbed a baseball bat that was there against the door and turned and when he saw that he turned and ran and I chased him out of the studio in to the street which is where we met the police. They got there very fast.

*Id*. at 44-45.

Appellant testified in his defense. He stated that he had been friends with Sarah Provard and dated her. *Id*. at 51. Appellant also admitted to going to Jeremy Wolf's photography studio on August 9, 2013. *Id*. Appellant testified: "I had [Sarah Provard's] property, her stuff in the back of my car and I just drove by and randomly saw them outside, stopped to give her her stuff." *Id*. Appellant also agreed that after stopping by the studio in the afternoon, he returned later that evening. *Id*. at 52. He explained, "I wasn't really thinking rationally. I was – it was about being

- 3 -

threatened, you know, I was initially threatened." *Id*. Appellant testified that "just Sarah" was at the studio when he returned, that he "tried to engage in a speech. That's all I did." *Id*. Appellant stated that Sarah Provard "kind of flipped out." *Id*. Appellant said that he did not see Jeremy Wolf. *Id*. He testified that Sarah Provard attacked him and he pushed her away. *Id*. at 53-54. Appellant testified that Jeremy Wolf then appeared and "[h]e just kind of grabbed me and we kind of wrestled around outside and, you know, we fell to the ground and that's it." *Id*. at 54. Appellant stated that he then realized he did not have his phone, so he re-entered the studio to get his phone, and Jeremy Wolf "charged towards me with a baseball bat." *Id*. at 55. He stated that he then went to leave the studio and was confronted by police. *Id*. Appellant conceded that he was "emotional, upset" when he went to the studio, but characterized his physical contact with Sarah Provard and Jeremy Wolf as defensive in nature. *Id*. at 55-57.

As a result of the foregoing events, Appellant was charged with two counts of simple assault and one count of disorderly conduct. At the conclusion of the September 11, 2014 trial, the jury acquitted Appellant of the simple assault charges and convicted him of disorderly conduct. On October 15, 2014, the trial court sentenced Appellant to twelve months of

probation. Appellant filed a notice of appeal on November 13, 2014. The trial court and Appellant have complied with Pa.R.A.P. 1925.[2]

Appellant raises a single issue for our review:

> Whether the Commonwealth presented sufficient evidence at trial to establish beyond a reasonable doubt each of the elements of disorderly conduct (M3) when the evidence did not establish that (1) that [Appellant's] actions occurred in public or (2) that [Appellant] intended to cause serious harm or substantial inconvenience to the public?

Appellant's Brief at 4.

Our standard in reviewing a sufficiency claim requires that all the evidence admitted at trial, and all the reasonable inferences to be drawn from that evidence, be viewed by the appellate court in the light most favorable to the verdict winner so as to determine whether there is enough evidence to enable the jury to find every element of the crime to have been proven beyond a reasonable doubt. **_Commonwealth v. Smith_**, 811 A.2d

---

[2] Appellant's counsel stated in the Pa.R.A.P. 1925(b) statement that on November 20, 2014, he met with Appellant to discuss the appeal, and Appellant was to contact counsel "by December 1st or 2nd" to specify which issues he wished to raise. Counsel further stated that he had "not heard" from Appellant as of the December 5, 2014 filing of the Pa.R.A.P. 1925(b) statement, and indicated that he would be filing an **_Anders_** brief. Nonetheless, counsel preserved in the Pa.R.A.P. 1925(b) statement two (2) issues regarding sufficiency of evidence and the introduction of Sarah Provard's testimony. In response, the trial court on January 8, 2015, filed an order transmitting the record to Superior Court, and stating that it would not be filing an opinion because counsel had indicated his intent to file an **_Anders_** brief. Order, 1/8/15.

578, 579 (Pa. Super. 2002) (citation omitted), abrogated on other grounds

by *Commonwealth v. Fedorek*, 947 A.2d 93 (Pa. 2008).  More specifically:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa. Super. 2003) (citation

omitted).

The Crimes Code provides:

**Disorderly conduct**

**(a) Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior; …

**(b) Grading.**—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in

disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

**(c) Definition.**—As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S.A. § 5503.

Appellant argues that the evidence was insufficient to support his third degree misdemeanor disorderly conduct conviction because 1.) there was no evidence that his actions occurred in public; and 2.) there was no evidence that he intended to cause serious harm or substantial inconvenience to the public. Appellant's Brief at 6, 9-15. We cannot agree.

Appellant first asserts that his actions did not occur in public. Appellant's Brief at 12-13. Appellant focuses his argument on the events that occurred inside Jeremy Wolf's photography studio during the evening when the studio was closed for business. *Id*. The word "public" in the context of disorderly conduct "means affecting or likely to affect persons in a place to which the public or a substantial group has access." 18 Pa.C.S.A. § 5503(c). Even if we accept Appellant's contention that the closed photography studio was not a public place, the evidence demonstrated that the events inside the studio extended beyond the studio into the street, because both Jeremy Wolf and Appellant testified that after Appellant's evening encounter with Ms. Provard inside the studio, Appellant exited the studio and then re-entered, *see* N.T., 9/11/14, at 45, 55, expanding the

incident into the public ambit. Appellant himself testified that during the evening incident, Jeremy Wolf appeared and "[h]e just kind of grabbed me and we kind of wrestled around **outside** and, you know, we fell to the ground and that's it." ***Id***. at 54 (emphasis added).

Moreover, the evidence established that earlier in the afternoon, while Ms. Provard and Mr. Wolf were outside of the studio, Appellant drove by recklessly (Ms. Provard described the car as "whipping" by, ***id***. at 24, and Mr. Wolf stated that the car "swerved and screeched" ***id***. at 42). Appellant conceded that he drove by and "stopped to give [Ms. Provard] her stuff." ***Id***. at 51. Ms. Provard testified that Appellant "threw a bag of stuff down on the ground", ***id***. at 24, and Mr. Wolf described Appellant as an "angry man" who "threw garbage at us." ***Id***. at 42. The afternoon event occurred in the street in front of the studio, refuting Appellant's claim that his actions did not occur in public. When an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public arena, even when that conduct is directed at only one other person, the offender may be subject to conviction for disorderly conduct. ***Commonwealth v. Fedorek***, 947 A.2d at 101 (Pa. 2008).

Appellant also argues that there was no evidence that he intended to cause substantial harm or serious inconvenience to the public. Appellant's Brief at 13. Although we understand the logic of Appellant's argument, the specific intent requirement of the disorderly conduct statute may be met by a showing of a reckless disregard of the risk of public inconvenience,

annoyance, or alarm, even if the defendant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm. ***Commonwealth v. Troy***, 832 A.2d at 1094 (Pa. Super. 2003) (citation omitted).

Based on the foregoing, including our standard of review and the fact that we may not weigh the evidence and substitute our judgment for the fact-finder, ***Troy, supra***, as well as the prevailing statutory and case law, we conclude that there was sufficient evidence to support the jury's determination that Appellant was guilty of disorderly conduct. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2015