J-S52042-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| MUHAMMAD H. QUDOOS, | : | |
| | : | |
| Appellant | : | No. 1983 EDA 2015 |

Appeal from the Judgment of Sentence June 9, 2015,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No: CP-51-CR-000497-2015

BEFORE:    FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:            **FILED AUGUST 24, 2016**

Muhammad H. Qudoos (Appellant) appeals from the judgment of sentence imposed following his conviction for disorderly conduct.   Upon review, we affirm.

The trial court summarized the background underlying this case as follows.

> On August 23, 2014, [Appellant] was arrested and charged with disorderly conduct in connection with events that occurred at or near 5616 Walnut Street in the City and County of Philadelphia.
>
> [On that date,] Philadelphia Police Officer Eugene Roher and his partner, Officer Olesik (first name not given) were on routine patrol, in full uniform, in a marked vehicle, when they encountered [Appellant] (and other unidentified individuals) on the corner of 56th and Walnut Streets.   Officer Roher and his partner attempted to disperse the crowd from the corner by asking everyone to move off the corner.   Everyone left the corner except for [Appellant] who told the officers that he was not on the corner.   According to Officer Roher, [Appellant] was directly on the corner and refused to move.    Since he did not

---

*Retired Senior Judge assigned to the Superior Court.

move from the corner as directed, Officer Roher and his partner exited their patrol car to do a pedestrian stop of [Appellant]. As the officers approached, [Appellant] started yelling and cursing at them. People started to come out of their houses, his friend (who had been on the corner with him) returned, [Appellant] yelled "record this" to no one in particular, and screamed more profanities. At this point, Officer Roher decided to arrest [Appellant] for disorderly conduct. As Officer Roher attempted to place him under arrest, [Appellant] began flaring his shoulders, tensed his body, and would[ not] allow either officer to place the handcuffs on him. [Appellant] continued to yell profanities and for someone to record the encounter.[1] Eventually [Appellant] allowed the officers to place handcuffs on him. [Appellant] did not testify or present additional evidence [at trial].

[Appellant] was convicted of disorderly conduct and was sentenced to twelve (12) months of probation. The Defenders Association of Philadelphia represented [Appellant] at trial and sentencing.

[Appellant] filed a notice of appeal to the Superior Court. On August 21, 2015, this court filed an order requesting [Appellant] to file a statement of matters complained of on appeal pursuant to Pa. R.A.P. Rule 1925(b). On September 11, 2015, a statement of errors complained of on appeal was filed on behalf of [Appellant]. [The trial court issued its opinion pursuant to Pa.R.A.P. 1925(a) on October 7, 2015.]

Trial Court Opinion, 10/7/2015, at 1-2 (footnote and unnecessary capitalization omitted).

On appeal, Appellant argues that the evidence is insufficient to sustain his conviction as well as its grading as a third degree misdemeanor as opposed to a summary offense.

---

[1] In addition to yelling "record this," Appellant yelled "Don't come near me" and profanities including "Don't fucking touch me" during the course of the interaction. N.T., 6/9/2015, at 13-14.

- 2 -

Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (citation omitted).

Appellant was convicted of violating subsection 5503(a)(1) of the Crimes Code.

[That subsection] provides: A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior. "Tumultuous" is not defined in Section 5503 or elsewhere in the Crimes Code. Commonly, "tumultuous" is defined as "marked by tumult"; "tending or disposed to cause or incite a tumult"; or "marked by violent or overwhelming turbulence or upheaval." "Tumult" is relevantly defined as "a disorderly agitation ... of a crowd usu. [*sic*] with uproar and confusion of voices," or "a violent outburst."

*Commonwealth v. Love*, 896 A.2d 1276, 1285 (Pa. Super. 2006) (citations and some quotation marks omitted).

"[W]hether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." ***Commonwealth v. Fedorek***, 946 A.2d 93, 100 (Pa. 2008) (quoting ***Commonwealth v. Hock***, 728 A.2d 943, 946 (Pa. 1999)) (emphasis omitted).

> The *mens rea* requirement of [section 5503] demands proof that appellant by his actions intentionally or recklessly created a risk or caused a public inconvenience, annoyance or alarm. The specific intent requirement of this statute may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm.

***Commonwealth v. Troy***, 832 A.2d 1089, 1094 (Pa. Super. 2003) (internal quotations and citations omitted).

Appellant argues that the evidence is insufficient to sustain his conviction because he did not act with the requisite intent, nor did he engage in fighting, threatening, or violent or tumultuous behavior. Appellant's Brief at 9. He maintains that his "statements occurred during a single, police-initiated interaction, during which [he] walked away from the police," and that under the law one may disagree with law enforcement even when it is through the use of loud, objectionable language that causes a crowd to form. ***Id.*** at 13, 15. Appellant also points out that he did not threaten to harm the police, nor did his statements aid anyone breaking the

- 4 -

law, and argues that this case constitutes an example of the impermissible use of the disorderly conduct statute as a "dragnet to punish critical statements that might breed ferment in the community."  Appellant's Brief at 12, 15, 17-18 (relying upon **Hock**, 728 A.2d at 947).

The testimony offered at trial demonstrates that during the incident in question, Appellant refused to listen to the officers' command to leave the corner and then proceeded to yell and curse at the officers.  N.T., 6/9/2015, at 11-14.  As a result of Appellant's actions, approximately 10-15 people came out of their houses and another individual, who previously had left the scene in response to the officers' command "without any problems," returned and started to "yell at [Officer Roher] and [his] partner" as well. **Id.** at 11-12, 14.  As the people were coming out of their houses, Appellant started to yell "record this" and was cursing at the officers.  **Id.** at 14.  As the officers then attempted to place him into custody, he began to flare his shoulders, tensed his body up, would not allow the officers to cuff him, and "kept screaming … trying to get his friends to record what was going on." **Id.** at 15.  Eventually, Appellant said that he was "going to let [the officers] cuff [him]" and "put his hands behind his back."[2] **Id.**

---

[2] Officer Roher further testified that he "just wanted to leave the scene.  It was already -- it was already too much going on because that's where [Appellant] -- he hangs out and all of his friend are there.  So just to get out of the situation, after we got him into the vehicle, we left."  N.T., 6/9/2015, at 19.

This evidence, viewed in the light most favorable to the Commonwealth, is sufficient to support Appellant's conviction for disorderly conduct in that, at the least, he recklessly created a risk of public inconvenience, annoyance, or alarm by engaging in tumultuous behavior.[3] **See Commonwealth v. DeLuca**, 597 A.2d 1121 (Pa. 1991) (evidence was sufficient to establish defendant created a risk of causing public alarm, annoyance, or inconvenience where DeLuca shouted "Get out of my f[ucking] way" at an officer after officer requested that he not leave the scene of a stabbing, where a crowd of 30 to 50 people had gathered, and then pushed the officer's hands off his shoulders and stated "Yes I'm leaving. Get the f[uck] out of my way" when officer repeated the instruction); **Love**, 896 A.2d at 1285 (defining "tumultuous behavior"). **Cf.**

---

[3] Appellant contends that the officers' command to leave the corner was "unlawful" and that their subsequent interaction with Appellant constituted an "unlawful[] stop[]." Appellant's Brief at 9, 12. He cites no authority in support of those claims. Even assuming the officers' conduct was unlawful, however, we agree with the Commonwealth that it is "irrelevant in assessing his behavior upon reacting to the officers' presence." Commonwealth's Brief at 12 n.3. **See Commonwealth v. Weiss**, 490 A.2d 853, 856 n.3 (Pa. Super. 1985) ("We do note, however, that appellant's belief (mistaken or otherwise) in her justification in taunting the police would not vitiate her recklessness with regard to annoyance or alarm of members of the public in the vicinity."); **Commonwealth v. Hughes**, 410 A.2d 1272, 1274 (Pa. Super. 1979) ("Appellant's challenge to the Commonwealth's proof of intent, based on her assertion that 'appellant used obscene language because she thought she and co-defendant were arrested without cause' is likewise without merit. Appellant's mistaken belief in her justification in taunting the police does not vitiate her recklessness with regard to annoyance of the other members of the public in the vicinity.") (citation omitted).

*Hock*, 728 A.2d at 946-47 (concluding that there was no violation of subsection 5503(a)(1) giving officer probable cause to arrest where "Hock's single epithet, uttered in a normal tone of voice while walking away from the officer, did not alarm or frighten him, and there were no bystanders").

Appellant next contends that the evidence was insufficient to support the grading of the crime as a third-degree misdemeanor as opposed to a summary offense. Specifically, Appellant alleges that the trial court's justification for grading the offense as a third-degree misdemeanor was that Appellant had yelled for someone to record the interaction,[4] which Appellant argues was improper because his pleas were protected speech, not said with the intent to cause substantial harm or serious inconvenience, and part of a constitutionally protected national "political discussion encouraging citizens to record police activities."  Appellant's Brief at 18, 20-21.

A disorderly conduct offense "is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense." 18 Pa.C.S. § 5503(b).

---

[4] Upon review, we agree with the Commonwealth that Appellant mischaracterizes the trial court's reasoning and, in any event, conclude that Appellant is not entitled to relief for the reasons stated herein.

As stated above, disorderly conduct is graded as a third-degree misdemeanor if, *inter alia*, "the actor … persists in disorderly conduct after reasonable warning or request to desist." Here, the following testimony was offered at Appellant's trial.

[Commonwealth]: Did you ask [Appellant] to stop yelling?

[Officer Roher]: Yes, several times.

[Commonwealth]: When?

[Officer Roher]: When we were out on Walnut Street, just basically trying to calm the situation down, versus -- take something small than making a big deal out of it.

N.T., 6/9/2015, at 16. This testimony, combined with the testimony regarding Appellant's continued yelling throughout the incident, *id.* at 13-15, is sufficient to support Appellant's conviction as a third-degree misdemeanor when viewed in the light most favorable to the Commonwealth. ***See Commonwealth v. Schwartz***, 615 A.2d 350, 361 (Pa. Super. 1992) (holding that the evidence sufficiently supported a conviction of disorderly conduct as a third-degree misdemeanor where Schwartz was screaming at police and another individual and one of the officers testified that he warned Schwartz to be quiet, but Schwartz persisted in screaming).

Appellant has failed to establish that he is entitled to relief.[5] Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 8/24/2016

---

[5] To the extent our reasoning in affirming Appellant's conviction could be construed as differing from the trial court, we note that "[w]e may … affirm the trial court's decision on any valid basis." **Commonwealth v. Janda**, 14 A.3d 147, 161 n.8 (Pa. Super. 2011).