J-S01016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAMMERON MCKENZIE | |
| Appellant | No. 527 WDA 2014 |

Appeal from the Judgment of Sentence February 28, 2014
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0000384-2013

BEFORE:  GANTMAN, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                **FILED JANUARY 09, 2015**

A jury found Kammeron McKenzie guilty of possession of a controlled substance (cocaine) with intent to deliver ("PWID")[1], possession of a controlled substance[2], possession of a small amount of marijuana[3], carrying firearms without a license[4], persons not to possess a firearm[5] and receiving stolen property[6].  The trial court sentenced McKenzie to an aggregate term

---

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(31).

[4] 18 Pa.C.S. § 6106(a)(1).

[5] 18 Pa.C.S. § 6105(a)(1).

[6] 18 Pa.C.S. § 3925(a).

of 5-10 years' imprisonment[7]. McKenzie filed a timely notice of direct appeal, and both McKenzie and the trial court complied with Pa.R.A.P. 1925. For the reasons that follow, we affirm.

McKenzie and his co-defendant, Anthony Slappy, were tried together. The trial court accurately recounted the evidence adduced during the defendants' trial as follows:

> On December 1, 2012 at approximately 1:30 a.m., Officer David Johnson of the City of Beaver Falls Police Department was on patrol in a marked police vehicle when he observed what he believed to be Anthony Slappy pumping gas into a white Cadillac at the A-Plus gas station in Beaver Falls. Officer Johnson also observed that another individual he could not identify from that distance was in the passenger seat of the Cadillac. After pumping the gas, the individual that appeared to be Slappy entered the driver's side of the Cadillac and exited the gas station parking lot.
>
> As the Cadillac turned onto Eighth Avenue and then to 26th Street, Officer Johnson further observed that the taillights of the vehicle were not illuminated. Officer Johnson then activated the overhead lights of his patrol vehicle in an attempt to initiate a traffic stop. According to Officer Johnson, the driver of the

---

[7] On October 30, 2013, the trial court sentenced McKenzie to an aggregate term of 7-14 years' imprisonment. McKenzie filed a timely post-sentence motion seeking modification of his sentence. He subsequently filed supplemental post-sentence motions which included challenges to the sufficiency and weight of the evidence. On January 30, 2014, the trial court granted McKenzie's motion for modification of sentence and denied the remaining post-sentence motions. On February 28, 2014, the trial court re-sentenced McKenzie to an aggregate of 5-10 years' imprisonment. McKenzie does not raise any challenges to his sentence in this appeal.

Cadillac started to pull toward the curb but ultimately drove back toward the middle of the road and continued driving. As a result, Officer Johnson activated his siren and notified dispatch that the driver was refusing to stop. The driver of the Cadillac disregarded the siren and continued traveling south on Tenth Avenue. As they approached the intersection of Tenth Avenue and 25th Street, it appeared to Officer Johnson that the driver attempted to make a left turn toward Ninth Avenue, but Captain Martin of the Beaver Falls Police Department had arrived to intercept the driver at Ninth Avenue. The driver continued on Tenth Avenue through a 'Do Not Enter' sign and onto a one-way street. It again appeared to Officer Johnson that the driver attempted to turn left at the intersection of 24th Street and Tenth Avenue, but the driver was again blocked by Captain Martin's police vehicle. The driver continued traveling south on Tenth Avenue, and, at the intersection of Tenth Avenue and 23rd Street, Officer Johnson observed, with the aid of his spotlight, the passenger moving around and throwing a white object out the window. According to Officer Johnson, the road on which the driver was traveling ended, and the driver was forced to turn left and eventually stop because he was intercepted by Captain Martin.

After stopping the vehicle, Officer Johnson and Captain Martin approached the Cadillac with their weapons drawn. Officer Johnson approached the passenger side of the Cadillac and recognized [McKenzie] as the passenger of the vehicle. According to Officer Johnson, [McKenzie] was leaning to the left and over his seat toward the floor of the Cadillac. Officer Johnson ordered [McKenzie] to show his hands, and, after initially refusing to comply, [McKenzie] raised his hands. Knowing that there was an active warrant for [McKenzie]'s arrest, Officer Johnson removed [McKenzie] from the inside of the Cadillac and took him to the back of the vehicle in order to conduct a search for weapons. While doing so, Officer Johnson observed a white rock substance on the window of the Cadillac. During the frisk,

[McKenzie] stated that he had 'a little bit of weed.' The search uncovered a small baggy of suspected marijuana, $640, and a cell phone. After Captain Martin removed the driver who was determined to be Anthony Slappy from the Cadillac, the officers discovered an unloaded .45 caliber Taurus 24/7 Pro firearm on the driver's side of the vehicle. Officer Johnson described the location of the firearm as follows:

> [W]e did observe that there was a firearm also under the, what would be the driver's seat post, next to the hump. So if I would be sitting in the driver's seat, there, like, the bolts where the seat is bolted to the floor, there's a firearm that would be slid down on the side of the hump right against that post.

The magazine for the firearm was also located on the driver's side of the vehicle. The officers also found another cell phone and a 45 caliber bullet 'on the passenger floorboard where [McKenzie] was seated[].' In addition, white residue that was later determined to be cocaine was found in the vehicle.

After [McKenzie] and Slappy were arrested and secured for transport, Officer Johnson and Captain Martin went to the intersection of Tenth Avenue and 23rd Street where they previously observed a white rock substance thrown from the passenger side window of the Cadillac. Upon arriving at that location, the officers found and collected a plastic baggie of suspected crack cocaine as well as several solid pieces of suspected crack cocaine of varying sizes. These items as well as the evidence obtained from the Cadillac were turned over to the police department's record custodian, Detective Kevin Burau.

Once the officers returned to the station, the suspected marijuana and cocaine were tested, yielding positive results for the presence of marijuana and cocaine. The officers also determined

that the Cadillac was registered to Slappy. After the Cadillac was impounded, the officers obtained a search warrant for the Cadillac. The subsequent execution of the search warrant revealed additional white, rock-type substances from both the driver and passenger sides of the vehicle. Using the serial number on the Taurus 24/7 Pro firearm, the officers conducted a search of the National Crime Information Center database, which revealed that someone in Independence Township had reported that the firearm had been stolen. The officers also determined through an inquiry to the Pennsylvania State Police Firearms Unit that neither [McKenzie] nor Slappy had a valid license to carry a firearm concealed. The firearm as well as the recovered ammunition, the suspected controlled substances, and DNA samples from [McKenzie] and Slappy were subsequently transferred to the Pennsylvania State Police for further testing.

Trial Court Opinion, pp. 1-4[8].

Several additional facts bear mention. Joseph Kukosky, a forensic DNA scientist with the Pennsylvania State Police Crime Lab, testified that swabs taken from the firearm contained DNA that matched McKenzie's DNA profile[9]. In addition, both McKenzie and Slappy testified in their own defense. McKenzie admitted to possessing the firearm in Slappy's vehicle but testified that Slappy had given it to him[10]. On the other hand, Slappy testified that he never possessed the firearm and claimed that McKenzie's

_____

[8] *See also* N.T., 9/6/13, pp. 85-98, 104-08, 112-16, 121-27, 160 (testimony cited in trial court opinion).

[9] N.T., 9/9/13, p. 68.

[10] *Id*., pp. 174-75.

testimony was false[11]. McKenzie admitted possessing cocaine but claimed it was for personal use[12]. The Commonwealth, however, demonstrated that McKenzie possessed 10 grams of cocaine mostly in rock form but had no pipe with which to ingest cocaine[13]. Additionally, McKenzie was unemployed at the time of his arrest, but he carried $640.00 in his pocket and possessed two mobile cellular phones[14].

McKenzie raises three issues in this appeal:

1. Was the evidence insufficient to convict McKenzie of the possessory firearm charges and for receiving stolen property consisting of that same gun because of the failure of the Commonwealth to prove that the gun was constructively possessed by McKenzie?

2. Whether the verdict of the jury regarding [PWID] was against the weight of the evidence because of trial testimony lacking in indicia of that specific intent and direct testimony that the drugs were possessed for personal use?

3. Was it error to qualify DNA Crime Lab witness Robert Kukosky as an expert witness by concluding that he had a reasonably specialized knowledge as to the subject matter for which he rendered testimony?

McKenzie first argues that the evidence was insufficient to sustain his convictions for carrying firearms without a license and persons not to possess firearms, because the Commonwealth failed to prove that he was in

_____

[11] *Id*., pp. 212, 214, 217.

[12] *Id*., pp. 158, 182, 186.

[13] *Id*., pp. 182, 186; N.T., 9/6/13, pp. 103-06, 110-16, 188.

[14] N.T., 9/9/13, p. 186.

possession of the firearm found in the vehicle during the traffic stop[15]. Our

standard of review for challenges to the sufficiency of the evidence is well-

settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations

omitted).

The Crimes Code defines carrying firearms without a license as

follows: "Except [for circumstances not relevant herein], any person who

_____

[15] In his Statement of Questions Presented, McKenzie purports to challenge the sufficiency of the evidence pertaining to his conviction for receiving stolen property. Brief For Appellant, p. 4. The argument section in his brief, however, fails to discuss receiving stolen property. *Id*., pp. 10-14. Thus, he has waived his sufficiency challenge with regard to receiving stolen property. *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa.Super.2012) (appellant waived claim of ineffective assistance of counsel by failing to argue issue in his brief).

carries a firearm in any vehicle or any person who carries a flrearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1). The Crimes Code defines the offense of persons not to possess firearms as follows:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).

To support a conviction under sections 6106(a)(1) and 6105(a)(1), the Commonwealth must prove that McKenzie was in possession of the firearm in question. Because McKenzie was not in physical possession of the firearm when the police officers spotted it in the vehicle, the Commonwealth must establish that he had constructive possession of the seized item. Constructive possession

> is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Brown****, 48 A.3d 426, 430 (Pa.Super.2012).

The trial court persuasively reasons that there was "ample" evidence of McKenzie's constructive possession of the firearm:

> Based on a review of the exhibits, the firearm as well as the other contraband was in plain view of the occupants of the vehicle. Officer Johnson testified that the firearm was found under the driver's seat near the middle of the vehicle. The jury could infer from this testimony that, based on the location of the firearm, [McKenzie] had the power to control the firearm. Officer Johnson also testified that, prior to discovering the firearm, he observed [McKenzie] leaning to the left and over his seat toward the floor of the Cadillac. Officer Johnson further testified that [McKenzie] was 'moving around towards the floor area of the vehicle' and refusing to show his hands despite commands to do so. The jury could easily infer from this testimony that [McKenzie] was attempting to unload and to hide the firearm from the approaching officers. The Commonwealth also presented expert testimony which indicated that the DNA obtained from the grip and trigger of the firearm matched the DNA obtained from [McKenzie]. In addition, [McKenzie] admitted to possessing the firearm in the Cadillac, although he claimed that Slappy gave it to him. Slappy, however, denied ever possessing the firearm and claimed that [McKenzie] was lying to the jury. In reaching its verdicts, the jury chose not to believe [McKenzie]'s explanation, as is the jury's right. ***Commonwealth v. Arrington***, 86 A.3d 831, 840 (Pa. 2014) ('the jury, in passing upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence').

Trial Court Opinion, pp. 9-10.  We agree with the trial court, and we conclude that the evidence, construed in the light most favorable to the

- 9 -

Commonwealth, establishes beyond a reasonable doubt that he was in constructive possession of the firearm.

The decisions cited in McKenzie's brief are distinguishable from the present case. McKenzie argues that *Commonwealth v. Armstead*, 305 A.2d 1 (Pa.1973), and *Commonwealth v. Duffy*, 340 A.2d 869 (Pa.Super.1975), demonstrate the Commonwealth's failure to present sufficient evidence of constructive possession. Brief For Appellant, pp. 11-13. In *Armstead*, the defendant, a passenger in a vehicle, was convicted of unlawful possession of a firearm that police officers discovered in the middle of the front seat. In *Duffy*, the defendant, a passenger in a vehicle, was convicted of unlawful possession of a firearm far underneath the passenger's side of the front seat, a mask and gloves in the glove compartment and burglary tools in the rear seat. On appeal, the convictions in *Armstead* and *Duffy* were reversed due to insufficient evidence that the defendants knew that there was contraband in their respective vehicles. Here, in contrast, multiple facts establish that McKenzie not only knew of but intentionally exercised control (i.e., constructive possession) over the firearm found in his vehicle: (1) the firearm was in plain view under the driver's seat in the middle of the vehicle, (2) McKenzie's movements as the officers approached the vehicle suggested that he was attempting to hide the firearm; (3) McKenzie's DNA was found on the firearm; and (4) McKenzie admitted possessing the firearm when Slappy gave it to him.

Another decision referenced in McKenzie's brief, **Commonwealth v. Heidler**, 741 A.2d 213 (Pa.Super.2000) (*en banc*), is distinguishable as well. In **Heidler**, the defendant and his girlfriend drove to a nearby school to pick up the defendant's son. On the way to the school, the defendant gave his handgun to his girlfriend, which she put in her purse. Both the defendant and his girlfriend carried valid licenses to carry a concealed firearm. The defendant parked his vehicle in the school parking lot and went into the school while his girlfriend remained in the vehicle. The defendant was unaware that his estranged wife had filed a complaint against him alleging a violation of the Protection From Abuse ("PFA") Act. Security personnel at the school knew about the petition and called the police, who rushed to the school and served the PFA petition on the defendant. While talking to the defendant's girlfriend, who still remained in the car, the police learned that she had the defendant's handgun in her purse. The defendant was convicted of possession of a weapon on school property[16]. On appeal, this Court held that there was insufficient evidence that the defendant had constructive possession of the handgun, because he had neither the power nor the intent to control the handgun:

> Presently, the firearm at issue was found in the purse of a passenger in [the defendant]'s vehicle.

_____

[16] **See** 18 Pa.C.S. § 912(b) (prohibiting individuals from "possess[ing] a weapon ... on the grounds of ... any elementary or secondary publicly-funded educational institution....")

- 11 -

[The defendant] and his passenger did not have equal access to that purse. Under the facts before us, the only person that could be deemed to have access to the purse was its owner -- the passenger in [the defendant]'s vehicle. Following the rationale in our precedent, it is only logical that where [the defendant] did not have access to the area where the handgun was found, [the defendant] cannot be deemed to have the necessary power to control or intent to control the gun.

Even assuming [the defendant] had the power to access the firearm, we fail to see how the trial judge could have logically concluded, beyond a reasonable doubt, that [the defendant] intended to exercise control over his handgun upon arriving at the middle school. The record in this case is devoid of evidence to support such an inference. On the contrary, it is clear that [the defendant]'s intent was to *relinquish* such control. Indeed, [the defendant] handed over his handgun to his girlfriend *prior* to entering school property. If it was his intention to retain control, he could have either kept the gun or put it in a place not under the control of a third party. The record does not, therefore, support a finding that [the defendant] intended to exercise control over his handgun.

*Id*., 741 A.2d at 216 (emphasis in original). Unlike the defendant in **Heidler**, who did not have access to the gun in his girlfriend's purse, McKenzie had access to the firearm in the middle of the vehicle. And instead of relinquishing control of the firearm, as the defendant did in **Heidler**, McKenzie exercised control by attempting to hide the firearm as the police approached his vehicle.

Finally, citing **Commonwealth v. Williams**, 346 A.2d 308 (Pa.Super.1975), McKenzie argues that the evidence is insufficient under

section 6106(a)(1) because the Commonwealth failed to prove that he concealed a firearm on or about his person. Brief For Appellant, p. 14. McKenzie misreads this statute to require proof both that he possessed a weapon in a vehicle **and** concealed it on or about his person. An individual is guilty under section 6106(a) if he carries a firearm without a license (1) "in any vehicle" **or** (2) "concealed on or about his person, except in his place of abode or fixed place of business." This provision is phrased in the disjunctive, so each condition by itself provides a sufficient basis for finding culpability. *Cf. Commonwealth v. Rhoads*, 636 A.2d 1166, 1167 (Pa.Super. 1994) ("the simple assault statute is phrased in the disjunctive, and each subsection of the statute provides an alternative basis for finding culpability"). The Commonwealth fulfilled its burden under section 6106(a) by proving that McKenzie carried a firearm without a license in a vehicle. No proof of concealment was necessary.

For these reasons, we reject McKenzie's challenge to the sufficiency of the evidence.

In his second issue on appeal, McKenzie objects to the weight of the evidence underlying his conviction for PWID. When reviewing a challenge to the weight of the evidence, this Court's role is not to consider the underlying question of whether the verdict was against the weight of the evidence. *Commonwealth v. Kane*, 10 A.3d 327, 332-333 (Pa.Super.2010). Instead, we must decide if the trial court palpably abused its discretion when

ruling on the weight claim. *Id*. In performing this task, we must remember that the initial determination regarding the weight of the evidence is for the factfinder, who is free to believe all, some or none of the evidence. *Id*. We must not reverse a verdict based on a weight claim unless that verdict was contrary to the evidence so as to shock one's sense of justice. *Id*. Moreover, "[a]n abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Id*.

The Controlled Substance, Drug, Device and Cosmetic Act prohibits "the manufacture, delivery, or possession with the intent to manufacture or deliver, a controlled substance..." 35 P.S. § 780-113(a)(30). "[D]etermining whether a person possesses a drug for personal use or with intent to deliver is based upon the totality of circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 114 (Pa.Super.2013). Although expert testimony can be beneficial, it is by no means necessary. *Id*. While many cases have opined that expert testimony is an important consideration in determining whether a person intended to deliver a controlled substance, no case has ever held that the absence of such testimony automatically renders the evidence insufficient to sustain a PWID conviction. *Id*.

During trial, McKenzie admitted possessing cocaine but insisted it was for personal use. Moreover, the Commonwealth did not present expert testimony that McKenzie intended to deliver cocaine to other individuals.

Nevertheless, there was considerable evidence that McKenzie intended to sell the cocaine to others. The cocaine was mostly in rock form and weighed ten grams. McKenzie had no paraphernalia, such as a pipe, with which to ingest rock cocaine. He was unemployed at the time of his arrest, yet he carried $640.00 in cash in his pocket and possessed two mobile cellular phones and a firearm. He attempted to destroy inculpatory evidence by throwing cocaine out of the passenger side window as his vehicle fled from Officer Johnson's marked patrol car. These facts, viewed in their totality, indicate that McKenzie was selling cocaine, and he discarded the cocaine during the flight from the police because this amount of cocaine showed that he was a drug dealer. *Commonwealth v. Coyle*, 203 A.2d 782, 789 (1964) (flight is evidence of consciousness of guilt and "may form the basis in connection with other proof from which guilt may be inferred"); *Commonwealth v. Gonzalez*, 858 A.2d 1219, 1223 (Pa.Super.2004) (actions that attempt to conceal crime or destroy evidence are admissible as evidence of consciousness of guilt). It was within the jury's province to credit this evidence, and the jury's decision to believe this evidence instead of McKenzie's claim of personal use does not shock our sense of justice.

In his final argument, McKenzie contends that the trial court erred in permitting Pennsylvania State Police forensic DNA scientist Joseph Kukosky to testify as an expert in the field of forensic DNA analysis. Kukosky

testified that swabs taken from the firearm discovered in the vehicle matched McKenzie's DNA profile.

The qualification of a witness as an expert

> rests within the sound discretion of the trial court, and the court's determination in this regard will not be disturbed absent an abuse of discretion. **See Commonwealth v. Serge**, 837 A.2d 1255, 1260 (Pa.Super.2003). As stated by this Court: 'The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation.' **Commonwealth v. Wallace**, 817 A.2d 485 (Pa.Super.2002).... A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on **training and experience. *Id*.**

**Commonwealth v. Toritto**, 67 A.3d 29, 37 (Pa.Super.2013) (emphasis in original).

The trial court explains that Kukosky met the standards for qualification as an expert witness:

> At the time of trial, Kukosky had worked in the Pennsylvania State Police DNA laboratory for three years, which included one year of training. Before that, Kukosky worked in the serology department for several years. Kukosky also testified to his education, which included coursework and seminars on topics such as DNA and related subjects. Finally, Kukosky indicated that he testified as an expert seven previous times in trial courts throughout Pennsylvania. Based on this testimony, the court concludes that Kukosky was qualified to testify as an expert.

Trial Court Opinion, p. 15[17]. We concur with this analysis and conclude that the trial court acted within its discretion by admitting Kukosky's testimony.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2015

---

[17] **See also** N.T., 9/9/13, pp. 35, 38, 42, 44, 48 (testimony cited in trial court opinion).