J-A10041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUAN M. VILLANUEVA | |
| Appellant | No. 1284 MDA 2014 |

Appeal from the Judgment of Sentence April 3, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005179-2013

BEFORE:  GANTMAN, P.J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 10, 2015**

Juan Villaneuva appeals from his judgment of sentence imposed for attempted burglary[1] and criminal mischief.[2]  We affirm.

Following a bench trial, the trial court found Villaneuva guilty of attempted burglary and criminal mischief.  On April 3, 2014, the court sentenced Villaneuva to 10-20 years' imprisonment for attempted burglary on the ground that it was the mandatory minimum sentence under 42 Pa.C.S. § 9714 for a second "crime of violence".  The court imposed no further penalty for criminal mischief.  On April 11, 2014, Villaneuva filed a timely post-sentence motion challenging the weight of the evidence.  On

_____

[1] 18 Pa.C.S. § 901(a).

[2] 18 Pa.C.S. § 3304(a)(5).

June 30, 2014, the trial court entered a memorandum and order denying this motion. Villaneuva filed a timely notice of appeal, and both Villaneuva and the trial court complied with Pa.R.A.P. 1925.

Villaneuva raises three issues in this appeal:

Whether the trial court erred in denying Appellant's pretrial motion to proceed to trial pro se where Appellant's request was timely/ unequivocal, and not made for the purposes of delay in violation of Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment to the United States Constitution?

Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's convictions where it failed to prove that Appellant possessed the specific intent to commit a crime within the premises he allegedly attempted to enter?

Whether the trial court erred in denying Appellant's Post-Sentence Motion where the trial court's verdict was against the weight of the evidence so as to shock one's sense of justice as the trial testimony failed to identify Appellant as the perpetrator of the crimes?

Brief For Appellant, p. 6.

In his first argument, Villaneuva claims that the trial court erred in refusing his request on the day of trial to represent himself *pro se*. We review this claim for abuse of discretion. ***Commonwealth v. El***, 977 A.2d 1158, 1165 (Pa.2009).

On February 10, 2014, the court held a hearing on pretrial motions. Villaneuva gave his attorney, the Public Defender, a written motion to dismiss all charges on the ground that a witness at the preliminary hearing

- 2 -

could not identify him.[3]  N.T., 2/10/14, pp. 4-5.  The Public Defender had no objection to submitting Villaneuva's motion to the court.  *Id*. at 5.  After brief argument, the court denied Villaneuva's motion.  *Id*. at 6.

Villaneuva stated that he wanted a bench trial instead of a jury.  N.T., 2/10/14, p. 7.  The court held a colloquy on this subject and granted Villaneuva's waiver of a jury trial.  *Id*. at 7-14.  Villaneuva then stated that he did not want the Public Defender to represent him because "he's ineffective counsel."  *Id*. at 14.  The court inquired: "Are you telling me you want to represent yourself?"  *Id*. at 15.  Villaneuva replied that he could not represent himself "because … I can't speak English very well."  *Id*.  Moments later, the court asked: "So you want an attorney?"  *Id*.  Villaneuva answered: "Yes, I do."  *Id*.  The court informed Villaneuva that he could either have the Public Defender represent him or pay money to retain private counsel.  *Id*. at 15-16.  Villaneuva admitted that he did not have money to pay private counsel, and the court stated: "So if private counsel is out of the question, then you have two choices, to represent yourself at this bench trial or [have the Public Defender] represent you."  *Id*. at 16.  Vilaneuva answered: "Okay, I'm going to stay with [the Public Defender]."  *Id*.

---

[3] All of Villaneuva's statements during both the pretrial hearing and trial were through an interpreter.

Two days later, on February 12, 2014, the court convened a bench trial. Prior to the first witness, Villaneuva objected to the Public Defender's services: "I don't want him. I don't want him. He has violated my rights … " N.T., 2/12/14, p. 3. The court asked whether Villaneuva wanted to represent himself instead of the Public Defender, and Villaneuva answered that he would represent himself. *Id*. at 7. The prosecutor objected to the timing of Villaneuva's abandonment of counsel: "[O]nce meaningful trial proceedings commence[,] you can no longer make the switch … to waive counsel … and I would suggest that meaningful trial proceedings have commenced because of what we did [at the pretrial hearing on February 10[th]]. *Id*. at 8. The court denied Villaneuva's motion to represent himself. *Id*.

Villaneuva complains that the trial court abused its discretion in denying his request to represent himself. We disagree. Our Supreme Court held in *El* that although a criminal defendant enjoys the constitutional right to represent himself, he must invoke this right "before 'meaningful trial proceedings' have begun." *Id*. at 1163 (citing *Commonwealth v. Jermyn*, 709 A.2d 849, 863 (Pa.1998)). In a bench trial, "meaningful trial proceedings" begin "when a court has begun to hear motions which have been reserved for time of trial; when oral arguments have commenced; or when some other such substantive first step in the trial has begun." *Id*. at

1165. Meaningful trial proceedings, the Court observed, should be "marked by a substantive, rather than a *pro forma*, event." **Id**.

The defendant in **El** executed a written waiver of his right to a jury trial and was represented by counsel during pretrial suppression proceedings. When the trial court denied the defendant's motion to suppress, defense counsel informed the court that the defense was ready to proceed to trial, and the defendant confirmed on the record that he waived his right to a jury trial. At this point, the defendant requested to represent himself at trial. The trial court denied this request, and the case proceeded immediately to trial. The trial evidence consisted mainly of non-hearsay evidence previously introduced during the suppression hearing.

Applying the "meaningful trial proceeding" test, the Supreme Court held that the trial court properly denied the defendant's request to represent himself *pro se*: "Appellant's request was not merely late. His suppression motion had been resolved, his jury trial waiver had been accepted, and the admission of evidence against him was nearly complete." **El**, 977 A.2d at 1167.

Here, as in **El**, the trial court acted within its discretion in denying Villaneuva's morning-of-trial request to represent himself. The court began meaningful trial proceedings two days earlier by conducting a pretrial hearing on Villaneuva's motion for dismissal and his waiver of a jury trial. The court covered the subject of representation during the pretrial hearing.

While Villaneuva at first protested the Public Defender's representation, he ultimately agreed to permit the Public Defender to represent him. The pretrial hearing was "meaningful" under *El* because it involved at least one "substantive" event: the denial of Villaneuva's motion to dismiss. Since meaningful trial proceedings took place before Villaneuva's morning-of-trial request to represent himself, the trial court properly denied his motion.

Moreover, the trial court properly denied Villaneuva's motion due to its suspect timing. During the pretrial hearing, the trial court carefully spelled out all of Villaneuva's options concerning representation. Villaneuva mulled over these alternatives and selected representation by the Public Defender, a sensible decision in view of Villaneuva's inability to pay private counsel and his uncertain grasp of the English language. It appears that Villaneuva's change of heart moments before the Commonwealth began presenting testimony at trial was a last-ditch gambit to stall the machinery of justice. No reason existed for the trial court to tolerate such gamesmanship.

Villaneuva's second issue on appeal is a challenge to the sufficiency of the evidence underlying his conviction for attempted burglary. Our standard of review for such challenges is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts

> and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations omitted).

The following evidence was adduced during trial. The victim in this matter, Hendrik Van Eeden, lives at 2111 Bellevue Road in Harrisburg, Pennsylvania, and has lived there since 1995 with his wife and two sons. N.T., 2/12/14, p. 9. Van Eeden's house is a ranch style house on one-third of an acre. *Id*. On September 30, 2013, Van Eeden was home alone during the morning hours, working in his home office, when he heard a noise. *Id*. at 11-12. About 30 seconds to a minute later, he heard glass breaking in the basement of the house. *Id*. at 12. Van Eeden retreated to his bedroom, where he saw Villanueva in his backyard, ten to fifteen feet away from his house. *Id*. at 13-14.

Van Eeden immediately called 911 while maintaining visual contact with Villanueva through the windows of his house and he recalled that Villanueva was carrying a walking cane. N.T., 2/12/14, at 14. Villanueva was also carrying a blue backpack and he was wearing a light tan baseball cap. *Id*. at 15. Van Eeden further described Villanueva wearing a brown

jacket and dark slacks. *Id*. at 16. While he was on the phone with 911, Van Eeden followed Villanueva as Villanueva walked out in front of Van Eeden's house and entered the driveway of another house. *Id*. Van Eeden also checked his basement and found a broken window. *Id*. at 13.

Police arrived at the scene three to five minutes after Van Eeden called 911. N.T., 2/12/14, at 18. Police officers apprehended Villaneuva, who told them repeatedly that "you're not going to get my prints." *Id*. at 40. At the time of his arrest, Villanueva was wearing a tan baseball cap, a blue denim shirt, a brown sweatshirt, and blue jeans. *Id*. at 40-41. He also was in possession of a walking cane and a blue backpack which contained personal items and blue latex gloves in the side compartment. *Id*. at 42.

Several minutes later, a police officer took Van Eeden to 22nd Street, one block away from his house, where other officers were holding Villanueva. N.T., 2/12/14, at 19-20. Van Eeden immediately identified Villanueva as the man he had seen earlier on his property, stating: "That's 100 percent the guy I saw coming out of my back yard and over my fence." *Id*. at 36. Van Eeden was able to make this determination by the clothing Villanueva was wearing at the time. *Id*. at 23. Prior to this incident, Van Eeden had never seen Villanueva before, and Villanueva did not have permission to be on Van Eeden's property on September 30, 2013. *Id*. at 27. At the conclusion of Van Eeden's direct testimony, the Commonwealth asked if Van Eeden had any doubt as to whether the man sitting in the

courtroom was the man he saw on his property on September 30, 2013. Van Eeden answered: "No doubt in my mind." *Id*. at 28.

After positively identifying Villanueva, Van Eeden returned to his home to inspect the damage. He discovered that his basement window was broken; it had not been broken prior to this incident. N.T., 2/12/14, at 24. Within days after the incident, Van Eeden discovered while clearing his lawn of leaves that the screen on the window had a horizontal cut, which Van Eeden surmised was the initial sound he heard prior to the glass breaking on September 30, 2013. *Id*. at 26. Van Eeden testified that the sound he heard prior to the glass breaking was consistent with the sound of a screen cutting. *Id*.

A person commits the offense of burglary "if, with the intent to commit a crime therein, the person … enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present." 18 Pa.C.S. § 3502(a)(1). "Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the circumstances." *Commonwealth v. Lambert*, 795 A.2d 1010, 1022 (Pa. Super. 2002). The Commonwealth does not need to allege or prove what particular offense the defendant intended to commit after making forcible entry into a private residence. *Id*. A person commits an attempt when, "with intent to commit a specific crime,

he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

Construed in the light most favorable to the Commonwealth, the evidence demonstrates that on the morning of September 30, 2013, Villaneuva entered Van Eeden's backyard, cut the screen on Van Eeden's basement window and then smashed the window, all without Van Eeden's permission. He possessed latex gloves in order to avoid leaving fingerprints and a backpack in order to store items stolen from Van Eeden's house. Van Eeden saw Villaneuva in his backyard and positively identified him mere minutes later, following his apprehension by police officers. Villaneuva told a police officer that "you're not going to get my prints," implicitly admitting his reason for bringing latex gloves to Van Eeden's residence. This evidence proves beyond a reasonable doubt that Villaneuva attempted to break into Van Eeden's house in order to commit a crime inside. *See Commonwealth v. Burton*, 770 A.2d 771, 784-85 (Pa.Super.2001) (attempted burglary conviction supported by evidence that someone had entered home by pushing in window screen, that shoe impression on seat of chair under window matched shoes defendant was wearing at time of his arrest, and that defendant had burglarized two nearby residences on same evening); *Commonwealth v. Otto*, 495 A.2d 554, 557, 560 (Pa.Super.1985) (testimony that defendant and companion were found late at night outside store window which had 4-5 foot break, that defendant and companion

began to leave the scene as police officer approached, and that defendant had blood on his hand and there was blood on the window, was sufficient to support conviction for attempted burglary).

Villaneuva's third and final argument on appeal is a challenge to the weight of the evidence. Villaneuva has waived this issue by failing to raise it in his Pa.R.A.P. 1925(b) statement of matters complained of on appeal. ***Commonwealth v. Diamond***, 83 A.3d 119, 136 (Pa.2013) (defendant waived claims in capital appeal that trial court erred in its findings of aggravating and mitigating circumstances, where defendant failed to raise these claims in his statement of matters complained of on appeal).

Even if Villaneuva preserved this issue for appeal, it is devoid of merit. The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. ***Commonwealth v. Forbes***, 867 A.2d 1268, 1273–74 (Pa.Super.2005). A new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. ***Commonwealth v. Bruce***, 916 A.2d 657, 665 (Pa.Super.2007). Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. ***Id.*** On appeal, "our purview is extremely limited

and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Knox***, 50 A.3d 732, 738 (Pa.Super.2012). An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. ***Forbes***, 867 A.2d at 1273–74.

The trial court fully and satisfactorily explained why Villaneuva's weight of the evidence claim is unsuccessful:

> Villanueva claims that the Commonwealth failed to identify him as the perpetrator of the attempted burglary, because the individual observed in Van Eeden's yard was identified based solely on Van Eeden's pre-trial identification of Villanueva. Villanueva concedes that Van Eeden identified him as the perpetrator, but that the failure of Van Eeden to positively identify Villanueva at trial is of greater weight.
>
> Here, while the only eyewitness, Van Eeden, was unable to directly view Villanueva's face, he was able to identify the Villanueva by what he was wearing, the items he possessed, and his skin tone. (N.T. at pp. 21-24). Van Eeden was taken to identify the perpetrator within five minutes after his window was broken, and was able to positively, "a hundred percent," identify Villanueva as individual he saw walking through his yard. (Id. at pp. 19, 22). Villanueva was also found to be wearing a blue shirt, tan baseball cap, brown sweatshirt, jeans, and was carrying a blue backpack and a cane. (Id. at pp. 40-41). All of the above clothing and items match the description of the clothing and items Van Eeden saw

- 12 -

on the individual walking through his yard. (Id. at p. 15). Villanueva also had a cane during the trial. (Id.). This Court found that all of Van Eeden's testimony was credible. In addition, latex gloves were discovered on Villanueva, which corroborate his intent to commit burglary, and he was found less than half a block away within minutes of the attempted burglary. (Id. at pp. 19, 22, 39, 42).

After a thorough review of the record, this Court is satisfied that the Commonwealth proved Villanueva guilty of Criminal Attempt-Burglary beyond a reasonable doubt. Consequently, this Court's guilty verdict does not shock this Court's sense of justice.

Memorandum And Order Denying Post-Sentence Motions, pp. 2-3.

Finally, although Villaneuva does not challenge the legality of his mandatory minimum sentence, we raise this question *sua sponte*. ***Commonwealth v. Wolfe***, 106 A.3d 800, 801 (Pa.Super.2014) ("a challenge to the legality of the sentence can never be waived and may be raised by this Court *sua sponte*"). We conclude that Villaneuva's sentence does not implicate the United States Supreme Court's recent decision in ***Alleyne v. United States***, -- U.S. --, 133 S.Ct. 2151 (2013).

***Alleyne*** held that *other than the fact of a prior conviction*, any fact that increases a mandatory minimum sentence for a crime is an "element" of the crime instead of a "sentencing factor", and this fact must be submitted to the factfinder and proved beyond a reasonable doubt. ***Id***., 133 S.Ct. at 2153. Here, the trial court sentenced Villaneuva to 10-20 years' imprisonment for attempted burglary, the mandatory minimum sentence under 42 Pa.C.S. § 9714, because it found that this was Villaneuva's second

conviction for a "crime of violence".[4]  **_Alleyne_** did not apply here because the mandatory minimum under section 9714 is triggered by the fact of a prior conviction, which falls outside of the spectrum of facts that **_Alleyne_** requires the Commonwealth to submit to the factfinder and prove beyond a reasonable doubt.

Judgment of sentence affirmed.

President Judge Gantman joins in the memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/10/2015


_____

[4] Section 9714 provides in relevant part:

> Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary…

42 Pa.C.S. § 9714(a)(1).  Section 9714 defines "crime of violence" to include both burglary and attempted burglary.  42 Pa.C.S. § 9714(d).