J-S78020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OSCAR TERRETO CARTY | |
| Appellant | No. 1042 MDA 2014 |

Appeal from the Judgment of Sentence May 15, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003824-2013

BEFORE: GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.: **FILED DECEMBER 24, 2014**

Oscar Carty attacked another male on a Reading street and stabbed him with a sharp object measuring 6-8 inches. The victim nearly died. A jury found Carty guilty of two counts of aggravated assault[1] and one count of possession of an instrument of crime ("PIC")[2]. In this direct appeal, Carty challenges the sufficiency and weight of the evidence underlying his convictions[3]. We affirm.

---

[1] The jury found Carty guilty of one count of aggravated assault under 18 Pa.C.S. § 2702(a)(1) and a second count under 18 Pa.C.S. § 2702(a)(4).

[2] 18 Pa.C.S. § 907.

[3] The trial court determined that the two aggravated assault convictions merged for purposes of sentencing. It sentenced Carty to 7-15 years' imprisonment for aggravated assault plus two years' consecutive probation for PIC. Carty filed timely post-sentence motions, which the trial court denied, and a timely notice of direct appeal. Both Carty and the trial court complied with Pa.R.A.P. 1925.

Carty raises the following issues on appeal:

> The evidence presented at trial was insufficient to establish beyond a reasonable doubt the guilty verdicts due to [Carty's] justification defense which was not disproved by the Commonwealth.
>
> The guilty verdicts were contrary to the weight of the evidence, where [Carty] established a justification defense that was not otherwise disproved by the Commonwealth.

Brief For Appellant, pp. 10-16.

Carty's first argument is a challenge to the sufficiency of the evidence. Our standard of review for challenges to the sufficiency of the evidence is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations omitted).

A person is guilty of aggravated assault under 18 Pa.C.S. § 2702(a)(1) if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." "Bodily injury" is "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. "Serious bodily injury" is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. A person acts "intentionally" with regard to a material element of an offense when, "if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S. § 302(b)(1)(i). A person acts recklessly with respect to a material element of an offense

> when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

A person is guilty of aggravated assault under 18 Pa.C.S. § 2702(a)(4) if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." A "deadly weapon" is "any firearm, whether

loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. § 2301. A person acts "knowingly" with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2).

Construed in the light most favorable to the Commonwealth, the evidence is as follows: at 12:30 a.m. on June 28, 2013, two friends, Frankie Cordova and Jarrod Care, left Care's residence in Reading, Pennsylvania to go to a convenience store. N.T., pp. 57-58. En route to the store, they encountered a female named Kim Larrabee sitting in her vehicle. N.T., p. 59, 99. Larrabee and Carty have a child together N.T., p. 145. Cordova approached Larrabee's vehicle to discuss an affair between Larrabee and the mother of Care's children. N.T., p. 60.

A taxi approached, and Carty exited from the taxi. N.T., pp. 62-63. Carty began yelling at Larrabee to the effect of "this is what you do when

I'm not around?" N.T., p. 103. Carty then approached Care and began yelling and pointing his finger. N.T., p. 64-65. Carty and Cordova exchanged words and began punching each other. N.T.,pp. 66-67. Care was not involved in the altercation but stood 10-15 feet away. N.T., p. 105.

During the fight, Carty reached towards his back pocket, pulled out a "sort-of-shiny object" and struck Cordova twice with the object, once in the chest and once in the upper abdomen. N.T., pp. 68-70, 106, 126, 131. Feeling pain in his ribs, Cordova backed away and began stumbling towards Care's house. N.T., p. 68-70. With his arm around Care for support, Cordova lifted his shirt, and Care stated that it looked like Cordova had been stabbed. N.T., p. 71.

When Care and Cordova arrived at Care's house, another family member took Cordova to Reading Hospital for treatment. N.T., p. 110. Cordova left the hospital due to the wait and his belief that the injury was not serious. N.T., p. 75. He returned to Care's house and went to sleep, thinking that rest and food would help him. N.T., p. 75 Roughly four hours later, he woke up and had difficulty breathing. N.T., p. 76. He was driven back to Reading Hospital, where he collapsed in front of the entrance and began vomiting. N.T., pp. 77-78. Medical personnel determined that the stab wound to the upper abdomen had lacerated his liver and "nicked" his pericardium, which caused blood to pool in his pericardium and disrupt the functioning of his heart. N.T., pp. 126, 131.

The surgeon who treated Cordova, Dr. Thomas Geng, opined that (1) the upper abdomen wound was roughly between "1 and 3 to 4 millimeters" away from Cordova's heart; (2) the object used was 6-8 inches long and very thin with a sharp point; and (3) a wound less than an inch closer to the heart would likely have caused Cordova's immediate death. N.T., pp. 129-30.

Viewed in the light most favorable to the Commonwealth, this evidence is sufficient to sustain Carty's conviction for aggravated assault under 18 Pa.C.S. § 2702(a)(1). Carty interrupted a conversation between Cordova and Kim Larrabee, and during the ensuing fight, Carty intentionally (or, at the very least, recklessly) stabbed Cordova twice with a sharp object that was 6-8 inches long. Cordova suffered serious bodily injuries from the stabbing, i.e., lacerations to his liver, pooling of blood in his pericardium, and disruption of normal heart function. Lastly, Carty's conduct manifests extreme indifference to the value of human life. The same evidence is sufficient to sustain Carty's conviction under section 2702(a)(4), because he intentionally (or, at the very least, knowingly) caused bodily injury to Cordova with a deadly weapon.

Carty complains that the evidence is insufficient because he was acting either in self-defense or to protect Larrabee from Cordova and Care. Larrabee testified that before Carty arrived, Cordova and Care kicked her car, and Cordova had snatched her cell phone and smashed it on the ground.

N.T., pp. 139-40. Larrabee and Carty both testified that Cordova and Care attacked Carty, and that Cordova threatened to get his "ratchet," which both Larrabee and Carty believed was a reference to a gun. N.T., pp. 144, 154-55.

Carty's and Larrabee's testimony does not render the evidence against Carty insufficient. As stated above, our role in examining the sufficiency of the evidence is to interpret the evidence in the light most favorable to the Commonwealth. Viewed in this light, the evidence establishes that Carty did not act in self-defense or in Larrabee's defense but instead was the aggressor against Cordova. By highlighting his own self-serving testimony and the testimony of his paramour, Larrabee, Carty asks us to view the evidence in the light most favorable to him instead of the Commonwealth[4].

A person commits the crime of PIC "if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An

_____

[4] In any event, there were significant inconsistencies in Carty's and Larrabee's testimony. While Larrabee testified at trial that Cordova and Care attacked Carty, a Reading police investigator testified that Larrabee told him that (1) she could not identify the male who got out of the taxicab during her confrontation with Cordova and Care, (2) the male chased Cordova and Care, and (3) she drove away when the male began chasing Cordova and Care. N.T., pp. 149, 169.

Carty testified that he first spotted the 6-8 inch object on the street when he was knocked to the ground in the middle of the fight, and that he did not know that he cut Cordova until the police charged him with aggravated assault. N.T., pp. 156, 164-65. A Reading police sergeant testified that after Carty's arrest, Carty admitted telling Cordova: "Hey, check yourself. I think I got you." N.T., p. 177.

instrument of crime is (1) "anything specially made or specially adapted for criminal use" or (2) "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d). The sharp, 6-8 inch object that Carty used to stab Cordova satisfies definition (2). It is the functional equivalent of a knife, a device "commonly used for criminal purposes." *Commonwealth v. DeHoniesto*, 624 A.2d 156, 161 (Pa.Super.1993). With regard to the second element of definition (2) – "possessed. . .under circumstances not manifestly appropriate for lawful uses it may have" -- we "must look at the context in which the instrument was used." *DeHoniesto*, *supra*. Carty intentionally used the object to stab Cordova twice, and one stab wound was nearly fatal. Further, because we view the evidence in the light most favorable to the Commonwealth, the evidence of PIC is sufficient notwithstanding Carty's claim of self-defense or defense of Larrabee.

In his second argument on appeal, Carty argues that his convictions are contrary to the weight of the evidence. We disagree. When reviewing a challenge to the weight of the evidence, this Court's role is not to consider the underlying question of whether the verdict was against the weight of the evidence. *Commonwealth v. Kane*, 10 A.3d 327, 332-333 (Pa.Super.2010). Instead, we must decide if the trial court palpably abused its discretion when ruling on the weight claim. *Id*. In performing this task, we must remember that the initial determination regarding the weight of the

- 8 -

evidence is for the factfinder, who is free to believe all, some or none of the evidence. *Id*. We must not reverse a verdict based on a weight claim unless that verdict was contrary to the evidence so as to shock one's sense of justice. *Id*. Moreover, "[a]n abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Id*.

The trial court acted within its discretion by denying Carty's weight claim. The parties presented different accounts as to Carty's role in the altercation with Cordova. The Commonwealth presented evidence that Carty was the aggressor. The defense insisted that Cordova and Case attacked Carty, and that Carty miraculously spotted the sharp object in the street during the fight and used it in desperation as a means of defense. It was within the jury's province to select which evidence to believe. The fact that the jury chose to credit the Commonwealth's version of the events does not shock our sense of justice.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2014