J-A11030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RANDOLPH W. EMERY, JR. | |
| Appellant | No. 3227 EDA 2014 |

Appeal from the Judgment of Sentence of September 24, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at No.: CP-48-SA-0000179-2014

BEFORE: FORD ELLIOTT, P.J.E., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                **FILED SEPTEMBER 03, 2015**

Randolph Emery appeals the September 24, 2014 judgment of sentence, which was imposed after Emery was found guilty of disorderly conduct—unreasonable noise, 18 Pa.C.S. § 5503(a)(2), following a *de novo* summary trial. Finding that the evidence presented at trial by the Commonwealth was insufficient as a matter of law to sustain the conviction, we vacate Emery's judgment of sentence.

The events leading up to Emery's conviction occurred on Kuder Road, where Emery resides, in the Borough of Bath, Moore Township, Pennsylvania. On Sunday, March 16, 2014, Eleanor Cary, whose residence is located approximately four hundred feet from Emery's home, was startled out of bed at around 7:55 a.m. by the repeated revving of the engine in Emery's pick-up truck. According to Ms. Cary, Emery revved the engine for

ten minutes, and then stopped. Ten minutes later, Emery resumed revving the engine for another ten minutes. The noise coming from the engine was extremely loud, which frightened her to such a degree that her body was shaking. Cary was certain that the noise was coming from Emery's residence, because she had observed Emery driving the truck and had heard him on many other occasions revving the engine. However, Cary did not see Emery in or near the truck that morning.

Richard Brown lives directly across the street from Emery, and has since the mid-1970s. On that Sunday morning, he was sitting in his living room drinking coffee with his girlfriend, when he heard Emery's engine revving on-and-off for ten to twenty minutes. Brown found the noise to be annoying. Like Cary, Brown did not see Emery operating the pick-up truck, but was certain that the noise was coming from Emery's truck.

Eventually, Cary contacted the Moore Township Police and complained about the noise. Officer Thomas Roberts responded to the call and met with Emery. Emery insisted to Officer Roberts that he was merely operating his truck on his property with no sinister motives or intent. The truck was turned off when Officer Roberts arrived, and he did not observe Emery inside the vehicle at any point. Officer Roberts did not investigate the vehicle to determine whether the exhaust system complied with Pennsylvania regulations.

At trial, Emery admitted that he owns the truck, which is a 1987 Chevrolet. Emery noted that the truck had passed Pennsylvania inspections

and emissions tests, and had compliant exhaust and muffler systems. On the day in question, which Emery believed to be a Saturday and not a Sunday, Emery asserted that he was simply warming his truck up for usage later that day, which he believed was necessary due to the age of the truck.

On September, 24, 2014, the trial court, hearing the matter *de novo* on summary appeal, found Emery guilty of disorderly conduct—unreasonable noise, and fined him $150.00. The trial court did not inform Emery of his right to file a notice of appeal, nor of the time frame within which Emery was required to file any such notice. On October 3, 2014, Emery filed a "Consolidated Motion and Memorandum Of Law for Reconsideration and Extraordinary Relief." On October 10, 2014, the trial court held a hearing on the motion, and denied Emery's motion at the conclusion thereof.

On November 6, 2014, Emery filed a notice of appeal. On November 7, 2014, the trial court directed Emery to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 24, 2014, Emery timely complied. On December 30, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

While the Rule 1925 process was proceeding, this Court entered an order on December 11, 2014, requiring Emery to show cause as to why this appeal should not be quashed as untimely. We noted that Emery's appeal, which was filed on November 6, 2014, was filed more than thirty days after the imposition of the judgment of sentence. We also noted for Emery that, pursuant to Pa.R.Crim.P. 720(D), post-sentence motions are not permitted

in summary cases. Emery initially filed a statement of cause with this Court. However, he later withdrew that statement, and filed an amended statement of cause. In his amended statement of cause, Emery maintained that his appeal, although untimely, nonetheless should be considered timely because the trial court failed to inform him of his appellate rights and time constraints. On February 26, 2015, the Commonwealth submitted a letter to this Court in which it conceded that the trial court's failure to advise Emery of his appellate rights constituted a breakdown in the court system and that Emery's notice of appeal should be considered timely. On January 23, 2015, before the Commonwealth conceded that Emery's appeal should be considered timely, we entered a second order deferring resolution of the issue to this panel.

Emery raises the following three issues for our consideration:

I. Did the Commonwealth present insufficient evidence at trial to support [Emery's] disorderly conduct conviction when no Commonwealth witness saw [Emery] operate his vehicle and using one's vehicle is not conduct which is disorderly or disturbing to the peace of the community?

II. Was [Emery's] conviction against the weight of the evidence presented at trial?

III. Should [Emery's] appeal be decided on the merits because he was not advised by the trial court of his appeal rights and was not advised of the requirement that his notice of appeal be filed within 30 days regardless of the filing of post-sentence motions?

Brief for Emery at 5.

We begin with Emery's third issue, because if this appeal is untimely, we would not have jurisdiction to rule on the merits of the appeal. However, we agree with Emery and the Commonwealth that the appeal must be considered timely. In **Commonwealth v. Patterson**, 90 A.2d 493 (Pa. Super. 2007), we explained a trial court's responsibilities at sentencing with regards to post-sentence rights, and the consequences for failing to abide by those obligations, as follows:

> Generally, an appellate court cannot extend the time for filing an appeal. **Commonwealth v. Braykovich**, 664 A.2d 133, 136 (Pa. Super. 1995) (citing Pa.R.A.P. 105(b)); **Commonwealth v. Smith**, 501 A.2d 273, 275 (Pa. Super. 1985) (stating "[a] court may not enlarge the time for filing a notice of appeal as a matter of grace or indulgence"). Nonetheless, this general rule does not affect the power of the courts to grant relief in the case of fraud or breakdown in the processes of the court. **See Braykovich**, *supra* at 136 (citing Pa.R.A.P. 105, Explanatory Note); **Smith**, *supra* at 275. Thus, before our Court may quash [an untimely] appeal, we must determine whether an administrative breakdown in the court system excuses the untimely filing of the notice of appeal.
>
> The courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court, at the time of sentencing, either failed to advise [an a]ppellant of his post-sentence and appellate rights or misadvised him. **See Commonwealth v. Coolbaugh**, 770 A.2d 788, 791 (Pa. Super. 2001); **Commonwealth v. Bogden**, 528 A.2d 168, 170 (Pa. Super. 1987); **Commonwealth v. Hurst**, 532 A.2d 865, 867 (Pa. Super. 1987); **Commonwealth v. Katz**, 464 A.2d 1343, 1345-1346 (Pa. Super. 1983). We have also found a breakdown where the clerk of courts did not enter an order notifying the appellant that his post-sentence motion was denied by the operation of law. **See Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003); **Braykovich**, *supra*. In each of the aforementioned instances, the "breakdown" occurred when the trial court or the clerk of courts departed from the obligations

- 5 -

specified in current Rules 704 and 720 of the Pennsylvania Rules of Criminal Procedure.

Rule 704(C)(3)(a) states that, at the time of sentencing, "[t]he judge shall determine on the record that the defendant has been advised . . . ", *inter alia*, "of the right to file a post-sentence motion and to appeal, . . . [and] of the time within which the defendant must exercise those rights." Pa.R.Crim.P. 704(C)(3)(a) (emphasis added). The Comment to this Rule provides that "[t]his rule is intended to promote . . . fair sentencing procedures . . . by requiring that the defendant be fully informed of his or her post-sentence rights and the procedural requirements which must be met to preserve those rights." Pa.R.Crim.P. 704, Comment. Furthermore, Rule 720(B)(4)(a) states that "[a]n order denying a post-sentence motion, whether issued by the judge . . . or entered by the clerk of courts . . . , shall include notice to the defendant of", *inter alia*, "the right to appeal and the time limits in which the appeal must be filed." Pa.R.Crim.P. 720(B)(4)(a) (emphasis added). "This requirement ensures adequate notice to the . . . [appellant], which is important given the potential time lapse between the notice provided at sentencing and the resolution of the post-sentence motion." Pa.R.Crim.P. 720(B)(4)(a), Comment.

*Patterson*, 940 A.2d at 498-99 (citations modified). We have reviewed the record and have confirmed that the trial court did not advise Emery of his appellate rights. Thus, in light of the principles set forth in *Patterson*, there was a breakdown in the court system, and we must consider this otherwise untimely appeal to be timely.

We now turn to Emery's challenge to the sufficiency of the evidence. Our standard of review governing sufficiency challenges is well-settled. We must determine:

whether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every

element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa. Super. 2003) (citations omitted).

Emery was convicted of disorderly conduct—unreasonable noise, which is set forth, in pertinent part, in our Crimes Code as follows:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

    \*   \*     \*

(2) makes unreasonable noise;

    \*   \*     \*

18 Pa.C.S. § 5503(a)(2). Emery now contends that the evidence was insufficient at trial to prove him guilty of this crime because the noise that he created was not unreasonable and because the record is devoid of any evidence that he acted intentionally or recklessly. We need not decide whether the noise was unreasonable, because we agree with Emery that the Commonwealth failed to demonstrate that he acted with either of the requisite mental states necessary to establish the crime of disorderly conduct.

The evidence presented a trial, in the light most favorable to the Commonwealth, demonstrates the following. Between approximately 7:30 a.m. and 8:00 a.m. on a Sunday morning in March, Emery turned on his truck and revved the engine. He apparently did so for approximately ten minutes. After about ten minutes of relative quiet, Emery once again revved the engine for another ten minutes. The engine was loud and, when revved, even louder. Notably, the Commonwealth did not present any evidence to demonstrate that the noise emanating from the truck was somehow louder than that of an average vehicle, or that the truck was modified in some way to make the noise louder than what normally comes from a truck of that size and age.

Cary was startled awake in her bedroom, and was scared by the loud noise. Brown clearly heard the noise from his home, and described the noise as annoying. When asked by Officer Roberts about the noise, Emery stated only that he was operating his truck on his private property.

"Under the statute[,] the Commonwealth must prove the intent of the actor." **Commonwealth v. Gilbert**, 674 A.2d 284, 286 (Pa. Super. 1996). As is evident, the Commonwealth introduced no evidence, nor did the Commonwealth make any specific arguments at trial, pertaining to Emery's intent on the morning in question. Indeed, the body of evidence presented at trial demonstrated only that Emery revved his engine shortly before 8:00 a.m. on a Sunday morning. There is no evidence, aside from Emery's own statement, elucidating the purpose for his actions. The record does not

disclose any motive, or even the slightest suggestion that Emery revved his engine on that morning with the purpose of causing a public inconvenience, annoyance, or alarm. The facts that Emery's actions alarmed Cary and annoyed Brown are of no moment. *See id.* at 286 (holding that intent cannot be inferred from the existence of actual annoyance.). The same can be said for the alternative *mens rea* of recklessness. The Commonwealth offered no evidence, and made no argument, that Emery acted recklessly. Again, all that was proven was the bare fact that Emery revved the truck at around 8:00 a.m. on a Sunday.

"The offense of disorderly conduct is not intended as a catchall for every act which annoys or disrupts people." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999). It is clear in this case that the charge was used for that exact purpose, to punish Emery for behavior that two of his neighbors found annoying. There is nothing inherently unlawful about revving an engine. On the other hand, it is undeniable that doing so earlier than people would like may be disruptive and annoying. But, without evidence that Emery revved his engine intentionally (or recklessly) to cause inconvenience, annoyance, or alarm to others, the Crimes Code cannot serve as a mechanism to punish an annoying neighbor.

We make this point because it appears from the record that many other residents of the neighborhood appeared at Emery's trial, apparently in a show of solidarity against Emery. The trial court recognized that these residents of the community were there, and that they were there to see

Emery punished. The trial court then encouraged them to stay and observe as the trial court imposed the conviction for which they were hoping. Indeed, the trial court made the following remarks towards the end of Emery's trial:

> THE COURT: I'm just curious. Whoever is involved in this case or affected by this would you please stand? Okay. All right. Is there anyone left in Moore Township or are you all here. All right. Please have a seat.
>
> *    *    *
>
> THE COURT: All right. Would everyone who is affected by this case please remain. We're going to have a decision in about 15, 20 minutes. It is not going to take a long time, all right? We're just going to do some research.
>
> *    *    *
>
> THE COURT: People here from Moore Township I want them to stay.
>
> *    *    *
>
> THE COURT: It is clear to me that there is something going on here that is not being said to me because this is not making sense that all these people would show up here and you would hire probably one of the best lawyers in Northampton County to represent you on this charge and do the kind of job he's doing as if he's representing someone in a homicide case over a disorderly conduct so something is happening here. I'm not sure what it is that is causing you and your neighbors to come to this point. But I will tell you I've been doing this job for about 11 years. Before that I was a lawyer for 20 years. And I had a very similar case in Moore Township and the case ended up and I believe [defense counsel] was working for me at the time, ended up in shooting among neighbors. . . . So this is a very dangerous situation. I think these neighborhood disputes sometimes are given short testimony by everybody but when you have to see the person that you hate every day when you go home it only makes—elevates the tensions for everybody. At

- 10 -

least when you are married to a person you get divorced, you move out. But until you sell your house you are stuck there.

Notes of Testimony, 9/24/2014, at 61-65. Defense counsel expressed concern that six non-witness residents of Moore Township had appeared in the courtroom trial to observe the proceedings. The trial judge responded by insisting that he did not consider the presence of these persons as a factor in finding Emery guilty.

It is unclear whether the unrelated individuals who appeared at Emery's trial in fact hated him, as the trial court suggested. It is even less clear that this is a situation that posed the danger to which the trial court referred. What is clear is that neither the presence of these people, nor the potential danger that could arise from neighborhood disputes, evinces a scintilla of evidence concerning Emery's intent. That citizens showed up to observe a trial (as is their right) in no way proves that Emery intended to cause any disruptions on the morning in question. As much as Emery's neighbors may have disliked him, and to the extent that they were there to see him convicted, the record remains the same, and it remains insufficient on its face to prove Emery guilty of a crime. We simply cannot infer either of the relevant mental states from the feelings that Emery's actions engendered in his neighbors, and our ability to do so certainly is not enhanced by the fact that the courtroom was filled with people from the neighborhood who wanted to see Emery convicted.

The trial judge insisted that he did not consider the presence of these persons, nor their apparent animosity toward Emery, in finding Emery guilty. We will take the trial judge's word for it, but not without observing that his words and actions could have suggested otherwise.

In this case, the Commonwealth failed to prove that Emery acted with either of the *mens rea* elements required by the disorderly conduct statute. Consequently, his conviction and judgment of sentence must be vacated. Emery is discharged. In light of our disposition, we need not consider any of Emery's other arguments.

Judgment of sentence vacated. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/3/2015