J-A09041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LESLIE ANN KILKUSKIE CRIDLAND | : | |
| | : | |
| Appellant | : | No. 2548 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 27, 2018
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001089-2018

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MAY 17, 2019**

This is an appeal from the judgment of sentence entered in the Court of
Common Pleas of Chester County (trial court) which, following a non-jury trial,
found Leslie Ann Kilkuskie Cridland (Cridland) guilty of one count of the
summary offense of Disorderly Conduct,[1] with a sentence of 90 days'
probation.  We affirm.

---

[1] 18 Pa.C.S. § 5503(a)(4) provides:

> (a) Offense defined.--A person is guilty of disorderly conduct if,
> with intent to cause public inconvenience, annoyance or alarm, or
> recklessly creating a risk thereof, he:
>
>> (4) creates a hazardous or physically offensive condition by
>> any act which serves no legitimate purpose of the actor.

---

*   Retired Senior Judge assigned to the Superior Court.

**I.**

The following factual history is taken from the trial court's 1925(a) opinion recounting the facts adduced in the non-jury trial.

> On November 10, 2017, [Richard] Perrin, his wife Colleen Perrin, and another neighbor, Jason Matthews, took their children to the school bus stop located at the intersection of Meadowview Lane and Birmingham Road in West Chester, Chester County, Pennsylvania a few minutes before 7:30 a.m. After the bus picked up the children, the three (3) adults were talking at the bus stop. They noticed [Cridland] pulling out of her garage in her vehicle. She drove down her driveway and stopped at the end of it for an extended period of time. Mr. and Mrs. Perrin and Mr. Matthews began walking back to their respective houses. Mrs. Perrin was on the far left on the grass, Mr. Matthews was in the middle on the grass, and Mr. Perrin was on the right in the street. [Cridland] pulled out onto the street and started driving directly toward them. Mr. Perrin was waving his arms, pointing to the other side of the street, and hollering at her. She continued driving toward them while honking her horn. She came less than an arm's length

_____

> (b) Grading.--An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

Although Section 5503 as a whole is aimed at preventing public disturbance, it accomplishes this aim by focusing upon certain *individual* acts, which, if pursued with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, constitute the offense of disorderly conduct. These individual acts focus upon the offender's *behavior.* Significant is the fact that the General Assembly did not require that this prohibited act be directed at a certain number of persons that could qualify as "the public." [I]ndeed, there are numerous appellate decisions of this Commonwealth determining evidence to be sufficient to sustain convictions for disorderly conduct where the underlying public acts involve, as in the instant case, the private melodramas of two or three people that also cause or create the risk of public disturbance. ***Com. v. Fedorek***, 946 A.2d 93, 100–01 (Pa. 2008) (citations omitted.)

- 2 -

away from Mr. Perrin (the distance from his elbow to his fingers). He knocked on her window as she drove by. She passed them, made a U-turn, then drove back to her house and into the garage. When Mr. Perrin got back to his property, he called the police from his cellphone.

[Cridland] testified at the trial. She stated that she was on her way to a meeting of real estate professionals when the incident occurred. When she first saw Mr. and Mrs. Perrin and Mr. Matthews, they looked like they were making some sort of plan. She stopped her car and the three of them walked toward her and started pounding on her car. Mr. Perrin was screaming at her. She started honking her horn in an effort to call for help because they were attacking her. Even though it was November, she claimed that her window was down and that Mr. Perrin might have punched her in the head. When the attack stopped, she drove away. Her leg and foot started shaking and she was nervous to drive, so she turned around and went home. She told her husband what happened but she did not call the police. She still went to her meeting that morning. Even though she claims she lost consciousness during the incident, she did not go to the hospital that day. She went to the emergency room in early December with "brain trauma" from the incident.

(Trial Court Opinion, 11/28/18, at 3-4).

Finding her testimony not credible, the trial court found Cridland guilty of the summary offense of disorderly conduct and sentenced her to 90 days' probation. It found that the evidence that she drove directly at Richard Perrin, Colleen Perrin, Jason Matthews (Neighbors) established that she created a hazardous or physically offensive condition causing them alarm. It also found that Cridland's actions were intentional because she could have moved over to give Neighbors more room but not chose not to do so, instead driving toward them. The trial court also noted that Cridland was in court previously for doing something similar to Mr. Matthews, and that there have been many

incidents involving her and her neighbors and the police had been called to the area 10-15 times in the past.

The trial court also found that her conduct was not *de minimis* within the meaning of 18 Pa.C.S. § 312.[2] That provision allows a trial court to dismiss petty infractions, even though the offense may have been made out when the offense was within customary license, did not cause or threaten harm and is not the type of conduct that was meant to be sanctioned. It found that this provision did not apply to conduct that was intentional and could have caused harm, and that sanctions were appropriate because this was not the first time that she drove her car at pedestrians, having been found guilty previously for

_____

[2] 18 Pa.C.S. § 312 provides in relevant part:

> (a) General rule.--The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:
>
> (1) was within a customary license or tolerance, neither expressly negative by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
> (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

- 4 -

the same conduct, and her conduct was not trivial.  Cridland then timely filed this appeal.[3]

## II.

## A.

On appeal, Cridland contends that the Commonwealth's evidence was insufficient[4] for the trial court to find her guilty beyond a reasonable doubt of disorderly conduct for two reasons.  First, she contends that the evidence was

---

[3] On the same day Cridland filed her appeal, the trial court entered an order directing her to file her Concise Statement of Matters Complained of on Appeal which she timely did.  **See** Pa.R.A.P. 1925(b).

[4] "Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is de novo and our scope of review is plenary."  **Commonwealth v. Patterson**, 91 A.3d 55, 66 (Pa. 2014) (citation omitted).  In reviewing a sufficiency of the evidence claim, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt."  **Commonwealth v. Kearney**, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted).  "Additionally, the evidence at trial need not preclude every possibility of innocence....  [T]he fact-finder is free to believe all, part [,] or none of the evidence."  **Commonwealth v. Trinidad**, 90 A.3d 721, 728 (Pa. Super. 2014) (citation omitted).  In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense.  **See Commonwealth v. Moreno**, 14 A.3d 133 (Pa. Super. 2011).  Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact-finder.  **Se Commonwealth v. Hartzell**, 988 A.2d 141 (Pa. Super. 2009).  The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.  **See Moreno**, **supra** at 136.

insufficient to establish the *mens rea* that she intended to cause a "public inconvenience, public annoyance, or public alarm" when she drove toward her Neighbors. Second, she contends that the evidence was also insufficient to establish the "*actus reus*," i.e. that she created a hazardous or physically offensive condition or that the act committed by the defendant served no legitimate purpose of the defendant.

The *mens rea* requirement of the disorderly conduct statute demands proof that defendant by his or her actions intentionally or recklessly created a risk or caused a public inconvenience, annoyance or alarm. ***See Commonwealth v. DeLuca,*** 597 A.2d 1121 (Pa. 1991); ***Commonwealth v. Troy***, 832 A.2d 1089 (Pa. Super. 2003).[5] "The *mens rea* requirement of [18 Pa.C.S. § 5503] demands proof that appellant by her actions intentionally or recklessly created a risk [of causing] or caused a public inconvenience, annoyance or alarm. The specific intent requirement of this statute may be met by a showing of a reckless disregard of the risk of public inconvenience,

---

[5] 18 Pa.C.S. § 302(b)(1) provides that a "person acts intentionally with respect to a material element of an offense when if the element involves the nature of his conduct or a result [of his conduct], it is his conscious object to engage in conduct of that nature or to cause such a result." For a person to act recklessly, 18 Pa.C.S.§ 302(b)(3) provides that "a person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." **Commonwealth v. Maerz**, 879 A.2d 1267, 1269 (Pa. Super. 2005) (citations and quotation marks omitted).

In this case, the testimony of Mr. Perrin and Mr. Matthews was sufficient evidence to establish that Cridland was intentional and reckless by driving her car within two feet of a group of three walkers on the side of the road when they were returning from taking their children to the school bus. They both testified as to Cridland's previous conduct and that she had been convicted of disorderly conduct for driving toward Mr. Matthews. Also, this incident occurred after a school bus picked up their children. Officer Gerald DiNunzio of the West Chester Police Department testified that Cridland called the Department 10-to-15 times because she was upset that the school children's bus pick-up or drop-off triggered her driving the car toward Neighbors because the event occurred shortly after the school bus picked them up. Because of all of that, we agree that there was sufficient evidence for the trial court to find that her conduct of driving toward Neighbors was intentional because she could have moved over to pass Neighbors but chose not to do so by driving within two feet of them.

Moreover, as to the *actus reus* component of the crime, Cridland contends that she did not create a danger, risk or cause alarm "merely" because she drove her car at approximately 15 miles per hour to 20 miles per

hour within two feet of Neighbors as they stood on the edge of the roadway. That argument is factually inaccurate because the trial court found that she was not merely driving down the cul-de-sac and happen to drive by Neighbors, but rather found that she drove down the road aiming her vehicle at Neighbors. Mr. Perrin and Mr. Matthews testified that her conduct, given her past behaviors, caused them fear and alarm. This evidence was sufficient to support a finding that Cridland created a hazardous or physically offensive condition with no legitimate purpose.

## II.

Cridland also contends that the trial court abused its discretion by denying her motion to dismiss under 18 Pa.C.S. § 302(b)(1) that deals with "*de minimis* infractions" because her conduct did not actually cause or threaten the harm sought to be prevented, or only trivially so, and the conduct here was not the type that the General Assembly intended to sanction by sanctioning disorderly conduct. However, this is exactly the type of conduct the General Assembly intended to sanction and the trial court did not abuse its discretion in finding that her conduct was not *de minimis*—aiming a several ton car at individuals, even only intending to pass close by, is not trivial or petty.

Judgment of Sentence Affirmed.

Judge Murray joins the Memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/19